# EXHIBIT B

MaY IX

COPY

RECEIVED IN CRIMINAL DOCKETING
MC–275

Court of Appeal Fourth District

**F I L E D**

MAY – 7 2007

Stephen M. Kelly, Clerk

**DEPUTY**

Name  Carrea Christopher

Address  1173 Front Street

San Diego, CA 92101

CDC or ID Number  7718918

Court of Appeal California

Fourth Appellate District – Division One
(Court)

Carrea Christopher Jr.
Petitioner
vs.
Superior Court of California for the
County of San Diego County Sheriff
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

D 050828

No. _____
*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC–275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 1 of 6

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 8.380
*www.courtinfo.ca.gov*

www.accesslaw.com

12

MC–275

**This petition concerns:**

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Parole
- [ ] Credits
- [ ] Prison discipline
- [XX] Other (specify):  The denial of Penal Code Section 1381 motion

1. Your name:  Carrea Christopher Jr.

2. Where are you incarcerated?  San Diego County Jail

3. Why are you in custody?  [XX] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i.  to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Penal Code section 273.5

   b. Penal or other code sections:  Penal Code section 273.5

   c. Name and location of sentencing or committing court:  San Diego County Superior Court of California

   d. Case number:  CE269321

   e. Date convicted or committed:  December 5, 2006

   f. Date sentenced:

   g. Length of sentence:

   h. When do you expect to be released?  Now

   i. Were you represented by counsel in the trial court?  [ ] Yes.  [XX] No.  If yes, state the attorney's name and address:

4. What was the LAST plea you entered? *(check one)*

   [XXX] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [X] Awaiting trial

MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 2 of 6

6. GROUNDS FOR RELIEF                                                                    MC–275

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The Petitioner is entitled to a Writ of Mandate dismissing the charges due to the
Superior Court denying Petitioner the right to speedy trial pursuant to
Penal Code section 1381.  The Petitioner was not in trial after a notice and
demand for speedy trial within 90 day period.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

See attachment

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

United States Constitution  Fifth Amendment, Fourteen Amendment and Sixth
Amendment California State Constitution Article 1.15 State of California

Penal Code Section 1381 People v. Cave, 81 Cal.App.3d

## ATTACHMENT

**Carrea Christopher Jr        - CE269321**

a.    Supporting facts:

The Petitioner was arrested and charged with 273.5, 236, 422 and 3056 December 5, 2006. (See San Diego County Sheriff Department booking sheet Exhibit A). The Petitioner filed a 1381 Notice of Demand for trial December 20, 2006. (See Exhibit B, Penal Code 1381 - Notice and Demand for Trial) the County of San Diego District Attorney Office received the 1381 Notice of Demand for Trial and sent a letter of acknowledgement. (See Exhibit C, the letter of acknowledgement.) The Petitioner motion the court after 90 days pursuant to Penal Code section 1381 to dismiss April 5, 2007 (See Exhibit D, the preliminary hearing and the 1381 motion hearing.

The court decided the prosecution was not served therefore made copies of the motion served the district attorney in court and denied the motion without prejudice and set a hearing date for the motion of April 20, 2007. (See Exhibit D, the preliminary hearing on the following pages 2-5 and 45-47.)

The court stated the People vs. Eldridge 52 Cal.4[th], stated a case must be filed prior to a 1381 motion. However, the People vs. Eldridge case did not state a case must be filed. It only stated the Eldridge case had to, because Eldridge already had a case dismissed due to Penal Code section 1381 and there was no new arrest so the only way to restart tolling in that case, due to Penal Code section 1387 was for it to be refilled after a Penal Code section 1381 dismissal of a case. (See attached Exhibit E, the April 20, 2007, Penal Code Section 1381 hearing.)

The Petitioner filed his Notice of Demand after all police investigation was completed. The final investigation report was completed December 27, 2006. The demand for trial was filed with the San Diego County District Attorney, December 29, 2006. There was no legitimate justification for delays after December 27, 2006. An unreasonable post complaint delay constitutes a denial of one's right to a speed trial. California Penal Code section 1381 cannot be excused by a showing of good cause for the delay. When Penal Code 1381 was legislated, the legislature could have easy written that pending is only after filing if the legislature had wanted to provide for the commencement of the 90 day period by some fixed or determinable event or by the passage of a reasonable time under some condition other than presently provided in the statute, it could easily have done so. The court in this case gave a cramp view of the opinion of the Eldridge case which was an encroachment of Penal Code 1381. Judicial establishment of such a decision that the trial court made in this case would be encroaching on the legislative power and wishes.

The Petitioner showed prejudice by the delay. The Petitioner showed substantial irreparable prejudice, actual and substantial prejudice, due to absence of witnesses, loss of memory by the prosecution witnesses, loss of evidence and difficulty in locating alibi witnesses and witnesses period. Once the Petitioner has shown prejudice, the burden shifts to the State to show on the record that the prejudice is not there. Once the Petitioner made a prima facia showing of prejudice and the Petitioner did. (See the 1381 hearing Exhibit E). The prosecution had the burden to either rebut the showing or to show a legitimate reason for the delay. If the prosecution wanted to they had the opportunity but failed to do so. (See People v. Cave (1978) 81 Cal.App.30 957.)

7. **Ground 2 or Ground** _____ *(if applicable):*                                    MC–275

Prosecutorial misconduct during a Penal Code 1381 hearing.

a. Supporting facts:

The prosecution knew they were beyond 90 days in bringing the Petitioner to trial but still fought the 1381 motion.

b. Supporting cases, rules, or other authority:

MC-275 [Rev. January 1, 2007]                    **PETITION FOR WRIT OF HABEAS CORPUS**                    Page 4 of 6

16

MC–275

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. X̶X̶X̶ No. If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   b.  Result _____ c.  Date of decision: _____

   d.  Case number or citation of opinion, if known: _____

   e.  Issues raised: (1) _____

             (2) _____

             (3) _____

   f.  Were you represented by counsel on appeal? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court? ☐ Yes ☒ No. If yes, give the following information:

   a.  Result _____ b.  Date of decision: _____

   c.  Case number or citation of opinion, if known: _____

   d.  Issues raised: (1) _____

             (2) _____

             (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _Awaiting trial._

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See _In re Muszalski_ (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   b.  Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
      _Attach documents that show you have exhausted your administrative remedies._

**17**

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.  ☒☒ No. If no, skip to number 15.     **MC—275**

13. a.   (1) Name of court: _____

       (2) Nature of proceeding (for example, "habeas corpus petition"): _____ _____

       (3) Issues raised: (a) _____

              (b) _____

       (4) Result *(Attach order or explain why unavailable):* _____

       (5) Date of decision: _____

   b.   (1) Name of court: _____

       (2) Nature of proceeding: _____

       (3) Issues raised: (a) _____

              (b) _____

       (4) Result *(Attach order or explain why unavailable):* _____

       (5) Date of decision: _____

   c.   *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
_____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)
_____
_____

16. Are you presently represented by counsel?  ☐ Yes.  ☒☒☒ No. If yes, state the attorney's name and address, if known:
_____
_____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒☒ No. If yes, explain:
_____
_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   I have submitted the motion three times to Superior Court (See transcript
   Exhibit E and attached motion)

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: MAy 4, 2007          ▶ _____
                             (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 2007]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page 6 of 6

**<u>Attached Penal Code 1381 Motion</u>**

CHRISTOPHER CARRE

7718918        50

1173 FRONT STREET

SAN DIEGO, CALIFORNIA

92101

F I L E D
Clerk of the Superior Court

APR 0 5 2007

By: M. AGUILAR, Deputy
EAST COUNTY DIVISION

PRO PER

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

THE PEOPLE OF THE STATE
CALIFORNIA,

        PLAINTIFF,

VS.

CARREA CHRISTOPHER JR.

      DEFENDANT.

CASE NO.:

NOTICE OF MOTION
AND MOTION TO AND
FOR DISMISSAL OF
CASE
Date: April 20, 2007
Time: 9:30 AM
Dept. D-11

TO THE COURT AND THE CLERK OF
THE COURT AND THE COUNTY OF SAN
DIEGO DISTRICT ATTORNEY, BONNIE
M. DUMANIS,

    THE DEFENDANT, CARREA CHRISTOPHER JR.,
HEREBY MOVES THE COURT AND WILL MOVE THE
THE COURT FOR THE DISMISSAL OF THIS CASE ON OR
ABOUT APRIL 5, 2007, LOCATED AT 250 EAST MAIN
STREET, EL CAJON, CALIFORNIA AT 8:45 A.M.
PURSUANT TO PENAL CODE 1381, CALIFORNIA
CONSTITUTION ARTICLE 1:15 AND THE UNITED STATES

PAGE ONE

20

1  CONSTITUTION VI AMENDMENT RIGHT TO A
2  SPEEDY TRIAL. THE DEFENDANT, CARREA CHRISTOPHER
3  WAS ARRESTED AND CHARGED WITH PENAL CODE
4  273.5, 236, 422. DECEMBER 5, 2006.
5  (SEE SAN DIEGO COUNTY SHERIFF DEPARTMENT
6  BOOKING SHEET EXHIBIT 1) THE DEFENDANT,
7  CARREA CHRISTOPHER JR., SUBSEQUENTLY FILED
8  A PENAL CODE 1381, NOTICE OF DEMAND FOR
9  TRIAL DECEMBER 20, 2006. (SEE EXHIBIT 2
10  PENAL CODE 1381 NOTICE AND DEMAND FOR TRIAL)
11  THE COUNTY OF SANDIEGO DISTRICT ATTORNEY
12  OFFICE RECIEVED THE 1381, DECEMBER 29,
13  2006 AND THE SAN·DIEGO COUNTY DISTRICT
14  ATTORNEY, BONNIE M. DUMANIS SENT A LETTER
15  OF ACKNOWLEDGE OF THE RECIEPT OF THE DEMAND
16  LETTER. (SEE EXHIBIT 3 THE LETTER OF RECIPT
17  OF THE PENAL CODE 1381) THE COUNTY OF
18  SAN DIEGO DISTICT ATTORNEY HAS WAITED
19  WELL OVER 90 DAYS TO BRING THIS CASE
20  TO TRIAL AND THE PLAINTIFF STILL AS OF
21  THIS APRIL 5TH DATE OF 2007, DOES NOT HAVE
22  A TRIAL DATE. THIS CASE MUST BE DISMISSED.
23      THE RIGHT OF ONE SERVING A
24  PRISION SENTENCE TO A SPEEDY TRIAL ON A CHARGE PENDI
25  AT THE TIME HIS TERM BEGINS OR FILED DURING
26  HIS TERM IS GOVERNED BY 1381 OF THE PENAL CODE,
27  PROVIDING THAT HE MUST BE BROUGHT TO TRIAL
28  WITHIN 90 DAYS AFTER HE GIVES WRITTEN NOTICE

PAGE TWO

TO THE DISTRICT ATTORNEY, AND NOT BY PENAL
CODE 1382, PROVIDING GENERALLY FOR DISMISSAL
OF CASES NOT BROUGHT TO TRIAL WITHIN 60 DAYS
OF THE FINDING OF THE INDICTMENT OR THE FILING OF
THE INFORMATION.

THIS MOTION IS BASED UPON THIS
MOTION, PENAL CODE 1381 THE UNITED STATES
CONSTITUTION VI AMENDMENT AND ANY ORAL ARGUMENT.
DATED: APRIL 5, 2007

RESPECTFULLY SUBMITTED,

BY: _____

CARREA CHRISTOPHER JR.

PAGE THREE

22

## DECLARATION OF PERSONAL SERVICE

**Case Name:  Carrea Christopher Jr.**                    **Case Number: CE269321**

**I, Brittany Rothdeutsch, do hereby declare:**

1.   **That I am employed by the San Diego County Bar Association, Private Conflicts Counsel.**
2.   **That I am over 18 years of age and not a party to the within entitled case.**
3.   **That my business address is 1333 7th Avenue, San Diego, California 92101.**
**That on  _May 7th_ , 2007, I served a copy of the following documents to the following agencies by enclosing them in an envelope and depositing the sealed envelope with the United States Postal Service with the postage fully prepared.**

**San Diego District Attorney**                    **Attorney General**
**District Attorney Bonnie Dumanis**                **Bill Lockyer**
**250 East Main Street**                            **110 West "A" Street, Suite 600**
**El Cajon, California 92020**                      **San Diego, California 92101**

**Honorable Herbert J. Exarhos**
**Judge of the Superior Court, Department 11**
**250 East Main Street**
**El Cajon, CA 92020**

**I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

**Executed on_____May 7th_____, 2007, at San Diego County, San Diego, California 92101.**

**Brittany Rothdeutsch**
**Legal Assistant**
**(619) 702-6199**

23

Carrea Christopher Jr.
1173 Front Street
San Diego, California 92101

ID Number: 7718918
CE269321


**Court of Appeal California**
**Fourth Appellate District – Division One**

## PETITION FOR WRIT OF HABEAS CORPUS


**Exhibits A-E**

# **EXHIBIT A**

# San Diego Sheriff's Department
## Inmate Detail Report

### PERSONAL

**Last:** CHRISTOPHER
**First:** CARREA
**Middle:**
**Sex:** M
**DOB:** 01/31/1954
**Age:** 52
**Birth Place:** TUCSON, AZ
**SSN:** 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
**RI System #:** 56037-000214
**Gang Flag:**
**Inmate Loc.:** --------
**DNA Status:** Completed

**JIM#:** 100054610
**BK#:** 6459813
**CLASS:**

**Citizenship:** UNITED STATES
**English Ability:** Excellent
**Height:** 6' 00"
**Race:** BLACK
**Hair:** BLACK
**Remarks (1st Arr.):**

**Language:** ENGLISH
**Foreign Notify:** N
**Weight:** 250 lbs.
**Eyes:** BROWN
**Total Bail:** $0.00

**Arr. Agency:** San Diego Police Department
**Arr. Location:** BEAT 437
**Officer:** ROSS
**Officer ID:** 6095
**Arr. Date:** 12/05/2006
**Custody Days:** 14
**Booking Date:** 12/05/2006
**Booking Time:** 15:04:21
**Jail:**
**Area/HU/Cell:** //
**Holds:**
**Arrest Type:** FIELD ARREST
**Date Released:** 12/18/2006 13:11:00
**Release Type:** DOC
**Early Release Date:**

### CHARGES

| Arr# | Arrest Date | Chg | Section Code | Description | Court Case | Bail Amount | Dispo Type | Dispo. Date/Time | ROC |
|---|---|---|---|---|---|---|---|---|---|
| 3 | 12/07/2006 | 1 | 3056 PC | VIOLATION OF PAROLE:FEL | P77287 | $0.00 | DOC | 12/18/2006 01:06 | |
| 2 | 12/05/2006 | 1 | HOLD | Rel Dt/Tm: 12-07-2006 2332 Agenc SDPD | | $0.00 | RBHD | 12/07/2006 23:26 | |
| 1 | 12/05/2006 | 1 | 273.5 PC | INFLICT CRPL INJ SP/COHAB | | $0.00 | 825 | 12/07/2006 23:25 | ARR |
| 1 | 12/05/2006 | 2 | 236 PC | FALSE IMPRISON W/VIOLENCE | | $0.00 | 825 | 12/07/2006 23:25 | ARR |
| 1 | 12/05/2006 | 3 | 422 PC | THREAT CRIME CAUSE DEATH/GBI | | $0.00 | 825 | 12/07/2006 23:25 | ARR |

### COURT

| Appearance | Destination Court | Date | Time | Arrest |
|---|---|---|---|---|

000071

#08774



# San Diego County
# SHERIFF'S DEPARTMENT
## BOOKING INTAKE / PERSONAL PROPERTY INVENTORY

**FIRST TWO BOXES TO BE COMPLETED BY JAIL STAFF**

| Jail Booking Number Assigned | Pre-Intake Clerk ID # | Agency Case # |
|---|---|---|

**PERSONAL INFORMATION** — PROPER COMPLETION OF THIS FORM WILL EXPEDITE YOUR BOOKING

| Name: Last, First Middle | Suffix | | Race | Sex | Age | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| Chisholm, Conroe | | | B | M | 52 | 2-3-54 |

| Alias Names: Last, First Middle | Suffix | Passport # |
|---|---|---|

| Height | Weight | Hair | Eyes | Place of Birth: City / State / Country | Citizenship (Country) |
|---|---|---|---|---|---|
| 60 | 250 | BLK | BRN | Tucson, AZ | US |

| Home Address | Street | City | State | Zip | Home Phone |
|---|---|---|---|---|---|
| 308 S. Meadowbrook | | SD | CA | 92114 | ( ) |

| Employer Name | Street | City | State | Zip | Work Phone |
|---|---|---|---|---|---|
| | | | | | ( ) |

| Social Security Number | DL, State ID or Other ID Number | License State | ARREST REMARKS: |
|---|---|---|---|
| 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 | | | |

**ARREST INFORMATION**

| Arresting Agency | Arrest Date / Time | Billing Agency | Location of Arrest (Beat # or Street Address and City) | Court Destination: (Circle) |
|---|---|---|---|---|
| SDPD | 12-5-06/ 5xx | SDPD | (437) | SD  ELC  SBCV  NCV |

| Arresting Officer: Name & ID | Transporting Officer & ID#: | Vehicle Location: ☐ Left At Scene  ☐ Towed By: | TOTAL BAIL AMOUNT: |
|---|---|---|---|
| Ross  Cass | Ross  Cass | | |

| **ARREST #1 (Field Charges or Warrant Information)** | | | **ARREST #2 (Additional Warrants or Additional Charges)** | | |
|---|---|---|---|---|---|
| Section | Code | Description | Section | Code | Description |
| 1 | 273.5 PC | Felony Dv Battery | 1 | | |
| 2 | 236 PC | False Imprisonment | 2 | | |
| 3 | 422 PC | Criminal Threats | 3 | | |
| 4 | 3056 PC | Parole Violation | 4 | | |
| 5 | | | 5 | | |

**PERSONAL PROPERTY INVENTORY**

HOLDS: ☐ FEDERAL   ☐ STATE PAROLE   ☐ IMMIGRATION

**PREBOOK ARJIS _____ BOOK ARJIS _____**
Cash Accounting (USA Currency Only)

| | | |
|---|---|---|
| _____ x $1 = $ _____ | WALLET: Y___ N_✓ | BELT: Y___ N_✓ |
| _____ x $2 = $ _____ | PURSE: Y___ N_✓ | GLASSES: Y___ N_✓ |
| _____ x $5 = $ _____ | CELL PHONE: Y___ N_✓ | |
| _____ x $10 = $ _____ | WATCH: Y___ N_✓ | RING: Y___ N_✓ |
| _____ x $20 = $ _____ | ___ YM | ___ YM |
| _____ x $50 = $ _____ | ___ WM | ___ WM |
| _____ x $100 = $ _____ | ___ OTHER | ___ OTHER |

KEYS: Y___ N_✓   SHOES: Y___ N_✓   MEDICATIONS: Y___ N_✓

NECKLACE: Y___ N_✓   EARRING: Y___ N_✓
___ YM   ___ YM
___ WM   ___ WM
___ OTHER   ___ OTHER

ADDITIONAL PROPERTY REMARKS:

**TOTAL $ 0**

| Sealed Bag w/Inmate Property Delivered to Jail   YES ☑  NO ☐ | Inmate's Signature   refused | Arresting Officer's Signature |
|---|---|---|

J-15 10/04
DISTRIBUTION: WHITE–BOOKING   YELLOW–INTAKE DEPUTY   PINK–ARRESTING OFFICER   GOLDENROD-INMATE

000100

# **EXHIBIT B**

STATE OF CALIFORNIA
**NOTICE AND DEMAND FOR TRIAL**
CDC 643 (8/93)

DEPARTMENT OF CORRECTIONS

TO THE DISTRICT ATTORNEY, _SAN DIEGO_ _____ COUNTY, State of California:

Please take notice that I, _CARREA CHRISTOPHER / CHRISTOPHER CARREA_, Inmate # _P77287_
(PRINT NAME IN FULL)

of _R.J. DONOVAN_ ; was convicted of the crime of _PAROLE VIOLATION_
(NAME OF FACILITY WHERE INCARCERATED)

in _SAN DIEGO_ _____ County, _CALIFORNIA_ _____, and was sentenced by said
(STATE)

on or about _DECEMBER 20, 2006_ to a term of _FIVE MONTHS ACTUAL DAY_

with a Tentative Release Date / Minimum Eligible Parole Date of _MAY 5, 2007_

I have reason to believe that the following criminal action is now pending against me in _SAN DIEGO_ County.

CHARGES: _TRAFFIC / MISDEMEANER / FELONY_ _____ WARRANT #: _____

COURT (Location): _SAN DIEGO_ _____ ARRESTING AGENCY: _SAN DIEGO COUNTY AND CITY_

HEREBY DEMAND A HEARING AND TRIAL OF SAID CRIMINAL ACTION AS PRESCRIBED BY SECTION 1381 OF THE CALIFORNIA PENAL CODE.

| DATE OF BIRTH | SEX | RACE | HEIGHT | WEIGHT | HAIR COLOR | EYE COLOR |
|---|---|---|---|---|---|---|
| 01-31-54 | MALE | BLACK | 6'0 | 238 | BLACK | BROWN |

FACILITY NAME AND ADDRESS WHERE INCARCERATED

R.J. DONOVAN, STATE OF CALIFORNIA
DEPARTMENT OF CORRECTION
480 ALTA ROAD
SAN DIEGO CALIF, 92179

OTHER NAMES (Aliases) USED:

CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

INMATE'S SIGNATURE

DATE _DEC, 20, 2006_

CII NUMBER:

**THIS PORTION IS TO BE DETACHED BY THE DISTRICT ATTORNEY'S OFFICE
AND RETURNED TO THE CASE RECORDS OFFICE OF THE FACILITY WHERE INMATE IS INCARCERATED.**

_____, District Attorney of the

County of _____, State of California, do hereby acknowledge receipt

NOTICE AND DEMAND FOR TRIAL, dated_____by_____

mate #_____,of_____

DISTRICT ATTORNEY

| | STATE OF CALIFORNIA, COUNTY OF | DATE |
|---|---|---|

RECEIPT TO BE RETURNED TO:    CASE RECORDS OFFICE

NAME OF FACILITY:_____

ADDRESS:_____

_____

_____

## VERIFICATION

**STATE OF CALIFORNIA**
**COUNTY OF SAN DIEGO**

( C.C.P. SEC. 446 & 2015.5; 28 U.S.C. SEC. 1746 )

I, _Beno Muel_ DECLARE UNDER THE PENALTY OF PERJURY
THAT : I AM THE _Declarant / Prisoner_ IN THE ABOVE ENTITLED ACTION;
I HAVE READ THE FOREGOING DOCUMENTS AND KNOW THE CONTENTS THEREOF AND THE SAME IS
TRUE OF MY OWN KNOWLEDGE , EXCEPT AS TO MATTERS STATED THEREIN UPON INFORMATION, AND
BELIEF, AND AS TO THOSE MATTERS , I BELIEVE THEM TO BE TRUE.

EXECUTED THIS _20_ DAY OF _DECEMBER 2006_ AT R.J.D.
STATE PRISON, 480 Alta Road, San Diego, CA 92179

(SIGNATURE) _____
(DECLARANT/PRISONER)

---

## PROOF OF SERVICE BY MAIL

( C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746 )

I, _____ , AM A RESIDENT OF .R.J.D. STATE PRISON, IN THE COUNTY
OF S.D. STATE OF CALIFORNIA; I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE AND AM I AM
NOT A PARTY OF THE ABOVE-ENTITLED ACTION. MY STATE PRISON ADDRESS IS: _480 ALTA ROAD_
_SAN DIEGO CALIF, 92179_

ON _12-20-06_ , I SERVED THE FOREGOING:
_NOTICE AND DEMAND FOR TRIAL_

(SET FORTH EXACT TITLE OF DOCUMENT IS SERVED)
ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY(S) THEREOF, ENCLOSED IN A SEALED ENVELOPE
(S), WITH POSTAGE THEREON FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO
PROVIDED AT Richad J. Donovan Correctional Facility

_SAN DIEGO DISTRICT ATTORNEY_
_330 WEST BROADWAY_
_SAN DIEGO CALIFORNIA_
_92101_

THERE IS DELIVERY SERVICE BY UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND THERE IS
REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO
ADDRESSED. I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATE: _____

(DECLARANT/PRISONER)

# EXHIBIT C

JESSE RODRIGUEZ
- ASSISTANT DISTRICT ATTORNEY

OFFICE OF
# THE DISTRICT ATTORNEY
### COUNTY OF SAN DIEGO

San Diego
330 West Broadway
San Diego, CA 92101
(619) 531-4040

http://www.sandiegoda.com

**BONNIE M. DUMANIS**
**DISTRICT ATTORNEY**

January 5, 2007

Christopher Carrea
CDC#P-77287
Richard J. Donovan
Correctional Facility
P. O. Box 799004
San Diego, CA  92179-9004

**RE:     DEMAND FOR TRIAL 1381**

Dear Mr. Carrea:

This is to acknowledge your Demand for Trial letter date December 20, 2006, was received by this office on December 29, 2006.

Your letter, along with a copy of this letter are being forwarded to the City Attorney's Office as the pending case(s) were handled by that office.

Sincerely,

JANE VIA
Deputy District Attorney, Case Issuing
and Extraditions Division

JV:ac

cc:     City Attorney's Office, 1200 Third Avenue, Suite 700, San Diego, CA  92101
        Records Case Manager #P-77287, RJD, P. O. Box  799004, San Diego, CA 92179

# **EXHIBIT D**

SCE269321  DA __MAG00001__     **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

DATE __04-20-07__ AT __09:30__ M.     06459813     ☐ CENTRAL  ☐ NORTH  ☑ EAST  ☐ SOUTH
                                                    **OTHER MOTION HG**

PRESENT: HON. __Herbert J. Exarhos__     JUDGE PRESIDING DEPARTMENT ___011___
                                          **T. MENDOZA  CSR# 12947**

CLERK __T. Stepner__     REPORTER _____ CSR# _____

                          REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128
                                          __C. Grasso__

THE PEOPLE OF THE STATE OF CALIFORNIA     _____
                  VS.                       DEPUTY DISTRICT ATTORNEY
__CHRISTOPHER CARRE__          __P - PROPER__
         DEFENDANT            ATTORNEY FOR DEFENDANT (APPTD/RETAINED)

VIOLATION OF *PC273.5(A)    PC422

ALLEG(S) PC273.5COS(1) CT-1    INT _____ ON FILE/SWN
PRIOR(S) _____    LANGUAGE _____

DEFENDANT ☑ PRESENT ☐ NOT PRESENT, ⓣ TRIAL/READINESS DATE _____ REMAINS AS SET / CONFIRMED / VACATED.

☐ COUNSEL & DEFENDANT STIPULATE TO PRELIMINARY / GRAND JURY TRANSCRIPT AS FACTUAL BASIS FOR PC 995 / PC 1538.5 MOTION.

☑ DEFENDANT'S MOTION TO DISMISS PURSUANT TO PC 995 IS ☐ GRANTED ☑ DENIED ☐ TAKEN UNDER SUBMISSION.

☐ GRANTED AS TO: _____  (PC138)  __with prejudice__

☐ DENIED AS TO: _____

☐ DEFENDANT'S MOTION TO SUPPRESS EVIDENCE PER PC 1538.5 IS ☐ GRANTED ☐ DENIED ☐ TAKEN UNDER SUBMISSION.

☐ GRANTED AS TO: _____

☐ DENIED AS TO: _____

☐ PEOPLE'S / DEFENDANT'S MOTION FOR DISCOVERY IS ☐ GRANTED ☐ DENIED ☐ TAKEN UNDER SUBMISSION.

☐ GRANTED AS TO: _____

☐ DENIED AS TO: _____

☐ OTHER MOTION(S): _____

☐ MOTION OFF CALENDAR WITH / WITHOUT PREJUDICE.

| PEO. | DEF. | WITNESSES SWORN & EXAMINED | P.D.C. | NO. | EXHIBIT DESCRIPTION | MRKD | RCVD |
|---|---|---|---|---|---|---|---|
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |
| [ ] | [ ] | _____ | [ ] | __ | _____ | [ ] | [ ] |

**CUSTODY**
☑ DEFENDANT REMANDED TO CUSTODY OF SHERIFF ☐ WITHOUT BAIL ☑ WITH BAIL SET AT / REDUCED TO / INCREASED TO $200,000 PC1275.
☐ DEFENDANT TO REMAIN AT LIBERTY ☐ ON BOND POSTED $_____ ☐ ON OWN/SUPERVISED RECOGNIZANCE.
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY ☐ ON OWN/SUPERVISED RECOGNIZANCE ☐ CASE DISMISSED ☐ THIS CASE ONLY.

**FUTURE HEARINGS**
☐ DEF'T'S WAIVER STATUTORY TIME FOR TRIAL
__Other Motion__ CONTINUED TO / SET FOR __5-8-07__ AT __9:30 AM__ IN DEPT. __11__
ON MOTION OF COURT / DDA / DEFENDANT. REASON: __re: pro per privileges__
TRIAL DATE _____ REMAINS AS SET / CONFIRMED / VACATED.  READINESS DATE _____ REMAINS AS SET / VACATED.
READINESS CONTD. TO / SET FOR _____ AT _____ IN DEPT. _____ MOTIONS DUE _____ DAYS LEFT _____

**BONDS/WRRNTS**
☐ BENCH WARRANT TO ISSUE, BAIL SET AT $_____. ☐ SERVICE FORTHWITH. ☐ ORDERED WITHELD TO _____
☐ BENCH WARRANT ISSUED/ORDERED _____ IS RECALLED/RESCINDED.
☐ BAIL IS ☐ EXONERATED ☐ FORFEITED. AMOUNT $_____ BOND NO. _____
    BOND COMPANY _____ AGENT _____

OTHER: __Other Motion set on 5-8-07 at 9:30 am in D-11 re: 911 tapes and information of Barbara Brown's past cases. Transcript from today's proceeding be given to the dept. on 4-26-07__

__Herbert Exarhos__
JUDGE OF THE SUPERIOR COURT

SDSC CRM-2D (Rev. 10/01)     **CRIMINAL MINUTES — LAW & MOTION**

34

*Full prot Order*
*Exp - 3/22/2010*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☐ Central Division  ☐ East County Division  ☐ North County Division  ☐ South County Division   Waivers: ☐ Time ☐ 4th

PEOPLE vs. Christopher Carre   STATUS: $200,000   ☐ CUST  ☐ BB  ☐ CB (Y/N)  ☐ NL  ☐ Cite  ☐ OR

CASE # CE269321-D  PROS. #   DOB: 3/54   BKG # 06459813   CTS 36 days _____ hrs.

DATE: 4/5/07  AT 1:55 DEPT. #  16   INTERPRETER:   ☐ Spanish ☐ Sworn ☐ Oath on File

JUDGE:  Louis R. Hanoian, Judge   REPORTER – CSR #  THOMAS McPHAIL

CLERK:  M. Aguilar, Deputy   Reporters Address :P.O. Box 120128  SR #12544

CHARGE(S):  Ct.1 PC273.5(a)/273.5(e)(1); Ct.2 PC422 -

Ct.3 PC236/237(a), 2 Prison Prs    Proper

C. Grasso

Attorney for the People (DDA)   Defendant present with Counsel ( PD / APD / PCC / Retained / Counseling )

---

**Case called for Preliminary Examination** ☐ Parties waive right to a ☐ continuous ☐ preliminary hearing.  ☐ Stipulate to bindover.
☐ People's motion to designate _____ as the Investigating Officer. ☐ granted ☐ denied.
☐ People's ☐ Defendant's ☐ Joint motion to exclude ☐ witnesses ☐ public: ☐ granted ☐ denied. ☐ Witnesses admonished by the Court.
☐ Counsel stipulate
☐ Counsel stipulate that _____ is deemed to have testified to certain matters recited on the record.
☐ Stipulation for preliminary hearing and motions only.

WITNESSES SWORN AND EXAMINED

☒ EXHIBITS AS LISTED BELOW:  ☒ SEE ATTACHED EXHIBIT LIST

| PED | DEF | | NO. | EXHIBIT DESCRIPTION: | MRKD | RECD |
|---|---|---|---|---|---|---|
| ☒ | ☐ | Samuel Ross, SDPD | 1 | Color copy of photo of victim | ☒ | ☒ |
| ☐ | ☐ | | 2 | Color copy of photo of victim | ☒ | ☒ |
| ☐ | ☐ | | 3 | Certified copy of MAO 859B | ☒ | ☒ |

☒ The People rest  ☒ No affirmative evidence presented by Defense  ☐ Defense rests. ☒ Arguments by counsel. ☐ Submitted.
**MOTIONS/WAIVERS** ☐ People's ☒ Defendant's ☐ Joint motion to Dismiss per PC1381 - ☐ granted ☒ denied.
☐ Defendant's motion to suppress evidence pursuant to PC1538.5 is ☐ granted ☐ denied.   w/out
☐ Defendant's motion to reduce to misdemeanor - PC 17(b)(5) pursuant to the Esteybar case is ☐ granted ☐ denied.   Prejudice
☐ Complaint is amended by interlineation as follows:   to renew.
**FINDINGS OF THE COURT**, Defendant **HELD TO ANSWER** on the following counts: Ct.1 PC273.5(a)/273.5(e)(1), Ct.2 PC422

Defendant **DISCHARGED** as to the following counts which are **DISMISSED** for insufficiency of evidence: Ct.3 PC236-237(a)

**ARRAIGNMENT** ☒ Counsel stipulate that the complaint is deemed to be the Information.
☒ Defendant is duly arraigned, furnished with a copy of Information. ☐ Transcript waived for arraignment. ☐ Appt. of counsel reaffirmed.
☒ Defendant pleads not guilty and denies all allegations.
☐ Defendant waives statutory time for trial. ☒ Fingerprint form filed.  remains as proper

**HEARINGS**
☐ Preliminary Exam. to resume                              at _____ In Dept. _____
☒ Arraignment on Information _____          at _____ In Dept. _____ MA
☐ Bail Review                                        at _____ In Dept. _____
☒ Readiness Conference  5-8-07                    at 1:30 AM Dept. 11
☒ Jury Trial  5-21-07                               at 9 AM In Dept. 11   Days left 14
☒ Motions due:  4-19-07
**OTHER**
☐ Counsel stipulate that if a motion is filed, the readiness conference date may be advanced/continued to the motion hearing date.
☐ Exhibits released to offering party by stipulation.
☐ The following witnesses are ordered to return on _____ : _____

**CUSTODY STATUS** ☒ Deft. **REMANDED** to custody of Sheriff, bail $ 200,000  ☐ WITHOUT BAIL ☐ Per PC1275 ☒ as set
☐ increased ☐ reduced                  ☐ Bail Unit Report Ordered re: SOR
☐ Deft. **RELEASED**: ☐ on bail previously posted ☐ case dismissed ☐ OR/SOR
☐ to: _____ on _____ at _____
**BAIL STATUS** Bail is ☐ exonerated ☐ Declaration of non-collusion/ reassumption of liability filed.
☐ Bail forfeiture set aside and bond reinstated/exonerated ☐ upon payment of court cost $ _____ within 30 days ☐ cost waived
☐ Bond #: _____ Bond $ _____ Bond Co. _____

JUDGE OF THE SUPERIOR COURT
☐ JPR ☐ CCMS ☐ TRAFFIC
☐ DMV by TSS

test a true copy   Dated: _____
CLERK, by _____, Deputy Clerk
stribution by: _____ on _____ to: Jail  Deft.  Other: _____

**PRELIMINARY EXAMINATION –Single Defendant**

SC – CRM151(Rev. 10-94)

1

1        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SAN DIEGO

3                     EAST COUNTY DIVISION

4

5     DEPARTMENT NO. 16          HON. LOUIS HANOIAN, JUDGE

6

7     _____)
                                      )
8     THE PEOPLE OF THE STATE OF      )
      CALIFORNIA,                     )
9                                     )
                 PLAINTIFF,           )
                                      )   NO. SCE269321DV
10                VS.                  )
                                      )READINESS: 05/08/07
11    CARRE CHRISTOPHER,              )TRIAL:     05/21/07
                                      )
12                                    )
                 DEFENDANT.           )
13    _____)

14

15                       APRIL 5, 2007

16            PRELIMINARY EXAMINATION PROCEEDINGS

17                   PAGES 1 THROUGH 47

18

19                   A P P E A R A N C E S:

20

      FOR THE PLAINTIFF:        BONNIE DUMANIS
21                              DISTRICT ATTORNEY
                                BY:  CLAUDIO GRASSO
22                              DEPUTY DISTRICT ATTORNEY
                                250 EAST MAIN STREET
23                              EL CAJON, CALIFORNIA 92020

24    FOR THE DEFENDANT:        CARRE CHRISTOPHER
                                PRO PER
25

26
      REPORTED BY:             THOMAS MCPHAIL, CSR 12544
27                              OFFICIAL COURT REPORTER
                                SAN DIEGO SUPERIOR COURT
28

2

1  PEOPLE V. CHRISTOPHER (SCE269321)

2  PRELIMINARY HEARING PROCEEDINGS

3  APRIL 5, 2007

4

5                    I N D E X

6              PEOPLE'S WITNESSES

7

8              DIRECT   CROSS   REDIRECT   RECROSS

9  SAMUEL ROSS     10      22      --        --

10

11

12              PEOPLE'S EXHIBITS

13

14  EXH. NO.      DESCRIPTION           I.D.   RECEIVED

15    1      PHOTOGRAPH OF VICTIM       20      35

16    2      PHOTOGRAPH OF VICTIM       21      35

17    3      PRIOR DOMESTIC VIOLENCE
18           CONVICTION.                        7

19

20

21

22

23

24

25

26

27

28

37

1

EL CAJON, CALIFORNIA; APRIL 5, 2007, 9:53 A.M.

2

3

4          THE COURT:   PEOPLE VERSUS CHRISTOPHER CARRE.

5  CE 269321.

6          MS. GRASSO:   DEPUTY DISTRICT ATTORNEY CLAUDIA

7  GRASSO FOR THE PEOPLE.

8          THE COURT:   MR. CARRE, ARE YOU REPRESENTING

9  YOURSELF?

10         MR. CHRISTOPHER:   YES.

11         THE COURT:   DO YOU STILL WANT TO DO THAT?

12         MR. CHRISTOPHER:   YES.

13         THE COURT:   OKAY.   YOU HAVE BEEN ADVISED ON

14  THE HAZARDS OF SELF REPRESENTATION, CORRECT?

15         MR. CHRISTOPHER:   YES.

16         THE COURT:   OKAY.   LET'S SEE.   MR. CARRE HAS

17  BEEN CHARGED IN THE COMPLAINT FILED ON THE 7TH OF MARCH,

18  2007, IN COUNT 1 WITH INFLICTING CORPORAL INJURY TO A

19  SPOUSE OR ROOMMATE, VIOLATION 273.5 OF THE PENAL CODE,

20  WITH A PRIOR CONVICTION FOR 273.5 WITHIN SEVEN YEARS; IN

21  COUNT 2 WITH MAKING A CRIMINAL THREAT, A VIOLATION OF

22  PENAL CODE 422; COUNT 3, WITH FALSE IMPRISONMENT BY

23  VIOLENCE, MENACE, FRAUD OR DECEIT, PENAL CODE SECTIONS

24  236 AND 237.

25         TWO PRISON PRIORS WITHIN THE MEANING OF 667.5

26  (B) AND 668.

27         MR. CARRE WAS ARRAIGNED ON THE 22ND OF MARCH;

28  STATES THAT HIS TRUE NAME IS ON THE COMPLAINT, ENTERS

2

1   NOT GUILTY PLEAS, AND DENIES THE ALLEGATIONS.

2        YOU HAVE HAD AN INVESTIGATOR AND A RUNNER

3   APPOINTED TO ASSIST YOU, MR. CARRE?

4        MR. CHRISTOPHER:  I HAD AN INVESTIGATOR.  THE

5   RUNNER HASN'T APPEARED.  I HAVE A MOTION THAT I HAVE TO

6   SUBMIT TO THE COURTS, BUT I NEED A COPY OF IT.

7        THE COURT:  WHAT IS THE MOTION ABOUT, SIR?

8        MR. CHRISTOPHER:  THE MOTION IS A 1381 MOTION

9   FOR DISMISSAL.  I SERVED THE DISTRICT ATTORNEY WITH THE

10   NOTICE AND DEMAND FOR SPEEDY TRIAL DECEMBER THE 20TH.  I

11   WAS CHARGED AND BOOKED UNDER THESE CHARGES DECEMBER THE

12   5TH.

13        THE COURT:  OKAY.

14        MR. CHRISTOPHER:  THE DISTRICT ATTORNEY'S

15   OFFICE SENT ME A RECEIPT AND ACKNOWLEDGMENT OF RECEIVING

16   THE DEMAND FOR SPEEDY TRIAL DECEMBER THE 29TH.  I SHOULD

17   HAVE BEEN IN TRIAL BY THE 29TH OF LAST MONTH.

18        THE COURT:  WELL, YOU WEREN'T EVEN ARRAIGNED

19   ON THIS CASE UNTIL LAST MONTH.

20        MR. CHRISTOPHER:  EXACTLY.

21        THE COURT:  WERE YOU IN CUSTODY THEN?

22        MR. CHRISTOPHER:  YES, I HAVE BEEN IN CUSTODY

23   SINCE I WAS ARRESTED ON THESE CHARGES ON DECEMBER THE

24   5TH, 2006.

25        THE COURT:  WELL, LET ME -- DID YOU WANT TO

26   FILE YOUR MOTION?

27        MR. CHRISTOPHER:  OH, YES, I NEED IT FILED.

28        THE COURT:  OKAY.

1    MR. CHRISTOPHER:  I NEED TWO COPIES.  I NEED A

2  COPY AND THE DISTRICT ATTORNEY NEEDS A COPY.

3    MS. GRASSO:  YOUR HONOR, FOR THE COURT'S

4  INFORMATION, WE ARGUED THIS ISSUE.  WE BROUGHT THIS

5  ISSUE UP IN FRONT OF JUDGE COOKSON AT THE READINESS.

6  AND JUDGE COOKSON ACKNOWLEDGED THAT MR. CHRISTOPHER WAS

7  ARRESTED IN EARLY DECEMBER, AND HE WAS VIOLATED ON

8  PAROLE.  SO THE CUSTODY HE WAS SERVING WAS A PAROLE

9  VIOLATION.  WE DID NOT FILE UNTIL FEBRUARY 26TH, THE

10  CHARGES ON OUR END.

11    MR. CHRISTOPHER:  THERE ARE EXHIBITS IN

12  THERE -- I TOLD THE JUDGE THEN THAT I WAS GOING TO FILE

13  A MOTION.  AND THE DISTRICT ATTORNEY DENIED THE FACT

14  THAT I HAD SERVED THEM WITH A NOTICE FOR DEMAND FOR

15  TRIAL, BUT IT IS IN THERE, AND THE DISTRICT ATTORNEY

16  SENT ME A LETTER ACKNOWLEDGING THAT THEY HAD RECEIVED

17  IT.  THAT IS IN THE MOTION ALSO.

18    THE COURT:  WELL --

19    MR. CHRISTOPHER:  AND, ALSO, I WAS BOOKED AND

20  CHARGED WITH THE CHARGES THAT I AM PRESENTLY CHARGED

21  WITH ON DECEMBER THE 5TH, 2006.

22    THE COURT:  LET ME ASK THIS, FIRST THINGS

23  FIRST, AND THAT IS WHAT IS YOUR TRUE NAME?

24    MR. CHRISTOPHER:  CARRE CHRISTOPHER.

25    THE COURT:  I AM SORRY, BECAUSE I WAS

26  REFERRING TO YOU AS CHRISTOPHER CARRE.

27    MR. CHRISTOPHER:  I KNOW IT.  THEY CHANGED MY

28  NAME.

1        THE COURT:  WELL.  AND IS IT JUNIOR?

2        MR. CHRISTOPHER:  YES.

3        THE COURT:  DATE OF BIRTH?

4        MR. CHRISTOPHER:  01-31-54.

5        THE COURT:  THAT IS CORRECT ON THE COMPLAINT.

6   AND THE COMPLAINT WASN'T FILED UNTIL MARCH 7TH.

7        MR. CHRISTOPHER:  TRUE.  BUT UNDER 1381, IF I

8   AM INCARCERATED, AND THERE ARE PENDING CHARGES, WHICH

9   THERE WAS, THEY HAVE 90 DAYS UPON NOTICE AND DEMAND FOR

10   SPEEDY TRIAL.

11        THE COURT:  OKAY.  PEOPLE WANT TO RESPOND?

12        MS. GRASSO:  YOUR HONOR, AGAIN WE FILED

13   CHARGES ON FEBRUARY THE 26TH, AND I SHOW THAT BEFORE WE

14   EVEN GOT THE CASE, MR. CHRISTOPHER WAS VIOLATED ON

15   PAROLE AND GIVEN SOME TIME FROM PAROLE, GIVEN HIS PRIOR

16   RECORD AND PRIOR TIME HANGING OVER HIM.  SO I THINK THE

17   TIME HE WAS SERVING BEFORE WE EVEN GOT THE CASE WAS ON

18   THE PAROLE END.  AND THEN WHEN WE RECEIVED THE FILE FROM

19   THE PEACE OFFICERS, WE PROMPTLY FILED THE CHARGES, BUT,

20   AGAIN, NOT UNTIL FEBRUARY 26TH.

21        MR. CHRISTOPHER:  YOUR HONOR, UNDER PENAL

22   CODE -- THAT IS WHAT PENAL CODE 1381 COVERS.  I DO NOT

23   HAVE TO BE CHARGED.  ACTUALLY, THE CHARGES DO NOT HAVE

24   TO BE FILED, BUT IT DOES HAVE TO BE PENDING.  AND THE

25   FACT THAT I WAS ARRESTED ON -- IN MY EXHIBIT I SHOW YOU

26   WHERE I WAS BOOKED IN THE COUNTY JAIL UNDER THESE THREE

27   CHARGES, I WAS BOOKED; THEREFORE, THE CHARGES WERE

28   PENDING.  PENAL CODE 1381 COVERS PENDING CHARGES.  PENAL

1   CODE 1382 COVERS FILED CHARGES.  WHAT THE DISTRICT

2   ATTORNEY IS TALKING ABOUT, THAT COVERS FILED CHARGES.

3   PENAL CODE 1381 COVERS PENDING CHARGES, CHARGES THAT ARE

4   NOT ACTUALLY FILED BUT ARE PENDING.

5         I MEAN, THE COURT HAS TO CONSTRUE THESE

6   CHARGES AS PENDING IF I WAS ACTUALLY ARRESTED AND BOOKED

7   UNDER THESE CHARGES, AND I SUBMITTED IT IN MY EXHIBITS.

8         THE COURT:  NO, SIR, IT IS NOT REQUIRED TO DO

9   THAT.  WHAT I AM GOING TO DO IS THIS, I AM GOING TO DENY

10  THE MOTION WITHOUT PREJUDICE FOR YOU TO RENEW IT.  I

11  MEAN, AS YOU ALREADY ACKNOWLEDGED, YOU HAVEN'T MADE

12  COPIES OF THIS AND SERVED IT WITH ANYBODY YET.

13        WHAT I WILL DO IS I WILL HAVE A COPY OF THIS

14  MADE, GIVEN BACK TO YOU, WE WILL FILE THIS IN THE COURT

15  FILE.  WE WILL FILE STAMP IT AS OF THIS DATE FILED IN

16  THE COURT FILE.  IF THIS CASE GETS BEYOND THE

17  PRELIMINARY HEARING STAGE, WE WILL BE SETTING A MOTION

18  DATE, AND THAT WILL BE THE DATE FOR YOU TO RENEW THIS

19  PARTICULAR MOTION IN FRONT OF THE JUDGE IN DEPARTMENT

20  11.

21        MR. CHRISTOPHER:  THANK YOU, SIR.

22        THE COURT:  AND THAT WILL GIVE YOU THE

23  OPPORTUNITY TO HAVE EVERYBODY HAVE BRIEFED THAT ISSUE,

24  AND YOU NEED TO GET -- OF COURSE YOU NEED TO GET IT

25  SERVED TO THE DA'S OFFICE AND THEN SERVED TO US.

26        MR. CHRISTOPHER:  YOU ARE GOING TO GIVE ME A

27  COPY BACK?

28        THE COURT:  I AM.  WE'RE NOT GOING TO DO THAT

1  RIGHT THIS MINUTE, BUT BEFORE YOU LEAVE HERE TODAY, YOU

2  WILL HAVE A COPY OF THIS.

3           MR. CHRISTOPHER:  OKAY.

4           THE COURT:  ALL RIGHT.  FIRST WITNESS.

5           MS. GRASSO:  THANK YOU, YOUR HONOR.  BEFORE I

6  CALL MY FIRST AND ONLY WITNESS, OFFICER ROSS, TO THE

7  STAND, I DO HAVE A CERTIFIED COPY OF MR. CHRISTOPHER'S

8  PRIOR DOMESTIC VIOLENCE CONVICTION, WHICH HAS BEEN

9  PREVIOUSLY MARKED PEOPLE'S EXHIBIT 3.

10          THE COURT:  HAVE YOU SEEN A COPY OF THAT

11 MR. CHRISTOPHER?

12          MR. CHRISTOPHER:  NO.  THIS IS YOUR COPY?

13          THE COURT:  THAT'S THE COURT'S COPY.

14          MR. CHRISTOPHER:  THIS IS THE COURT'S COPY.  I

15 WOULD LIKE TO STATE, FOR THE RECORD, I DON'T HAVE A

16 COPY.  I HAVE SEEN IT.  I REVIEWED IT.

17          THE COURT:  ALL RIGHT.  YOU ARE MOVING THAT

18 INTO EVIDENCE?

19          MS. GRASSO:  YES, YOUR HONOR.

20          THE COURT:  ANY OBJECTION TO THAT BEING

21 RECEIVED?

22          MR. CHRISTOPHER:  YES, I DON'T HAVE A COPY.

23          THE COURT:  THAT IS NOT A VALID OBJECTION.

24          MR. CHRISTOPHER:  I UNDERSTAND, BUT THAT IS MY

25 OBJECTION.

26          THE COURT:  THE OBJECTION IS OVERRULED.  THAT

27 WILL BE RECEIVED.

28          (PEOPLE'S EXHIBIT NUMBER 3 WAS

```
 1              RECEIVED INTO EVIDENCE.)
 2              THE COURT:  THE COURT WILL -- THIS IS A
 3   CERTIFIED COPY OF AN OFFICIAL COURT RECORD AND,
 4   CONSEQUENTLY, I AM GOING TO ACCEPT IT AS AN EXCEPTION TO
 5   THE HEARSAY RULE AND WILL TAKE JUDICIAL NOTICE OF THIS
 6   COURT'S OWN RECORDS, IS WHAT THIS IS.  SO, CALL YOUR
 7   WITNESS.
 8              MS. GRASSO:  THANK YOU, YOUR HONOR.  AND WE
 9   PROVIDED DISCOVERY TO MR. CHRISTOPHER OF EVERYTHING WE
10   HAVE, INCLUDING THESE PICTURES, BUT I WANT TO SHOW HIM
11   WHAT WE'RE GOING TO USE AS EVIDENCE.
12              THE COURT:  DID YOU NOT GIVE HIM A COPY OF THE
13   PRIOR?
14              MS. GRASSO:  NO, HE HAS A COPY.
15              MR. CHRISTOPHER:  I HAVE MY DISCOVERY HERE; IT
16   IS NOT IN THERE.
17              MS. GRASSO:  YES, HE HAS COPIES OF ALL THESE
18   RECORDS.
19              MR. CHRISTOPHER:  AND I DON'T HAVE A COLOR
20   PHOTO -- I DON'T HAVE THAT.  I HAVE A BLACK AND WHITE
21   PHOTO.  I DO HAVE A COPY OF THAT, BUT IT IS IN BLACK AND
22   WHITE.
23              THE COURT:  OKAY.
24              MR. CHRISTOPHER:  I SHOULD HAVE IT IN COLOR AS
25   WELL.
26              THE COURT:  WHY?
27              MR. CHRISTOPHER:  WHY?  BECAUSE THE DISTRICT
28   ATTORNEY HAS IT.
```

44

8

1          THE COURT:  WELL, THAT DOESN'T MEAN YOU HAVE

2    TO HAVE IT IN COLOR.

3          MR. CHRISTOPHER:  I MEAN, THERE MAY BE

4    SOMETHING MISSING THROUGH THE COLOR, YOU KNOW.

5          THE COURT:  WELL, EXPLAIN TO ME WHAT THAT IS,

6    AND I WILL MAKE SURE THEY GET YOU A COLOR COPY.  IF I

7    HAVE SOME IDEA OF WHAT THE DIFFERENCE IS BETWEEN A COLOR

8    PHOTOGRAPH AND A BLACK AND WHITE PHOTOGRAPH.

9          MR. CHRISTOPHER:  YOUR HONOR, I JUST BELIEVE

10   THAT I SHOULD HAVE THE SAME EVIDENCE THAT THE DISTRICT

11   ATTORNEY HAS.  LIKE, IF IT'S A HARDSHIP ON THE DISTRICT

12   ATTORNEY'S OFFICE, I CAN UNDERSTAND.  BUT TO PROVIDE ME

13   WITH A COLOR COPY THAT THEY HAVE, IT IS NOT A HARDSHIP.

14         MS. GRASSO:  YOUR HONOR, WE JUST PUT OUT FOR

15   DISCOVERY A DISK PROVIDED TO US FROM SAN DIEGO PD.  WE

16   PUT IT OUT FOR MR. CHRISTOPHER'S -- I DON'T KNOW WHO IS

17   PICKING UP HIS THINGS, AN INVESTIGATOR, I BELIEVE, THE

18   PHOTOS ARE ON HERE, ASIDE FROM THE BLACK AND WHITE.

19         THE COURT:  SO ALL OF THE PHOTOS THAT WERE

20   GENERATED THROUGH THE PD HAVE BEEN PLACED ONTO A DISK,

21   THAT HAS BEEN GIVEN TO THE DISTRICT ATTORNEY'S OFFICE;

22   YOU HAVE MADE A COPY OF THAT AND THAT HAS BEEN MADE

23   AVAILABLE TO MR. CHRISTOPHER'S RUNNER?

24         MS. GRASSO:  RIGHT.  HE SAYS HE DOESN'T HAVE A

25   RUNNER, BUT WE SHOW --

26         THE COURT:  ONE HAS BEEN APPOINTED.

27         MS. GRASSO:  SOMEBODY IS PICKING UP HIS ITEMS,

28   SO.

45

1     MR. CHRISTOPHER:  IN FACT, THE COURT, WHEN I
2  WAS ARRAIGNED, ORDERED THAT I BE PROVIDED AN
3  INVESTIGATOR AND A RUNNER.
4     THE COURT:  YES.
5     MR. CHRISTOPHER:  AND A WEEK AFTER THAT, I WAS
6  STILL NOT PROVIDED AN INVESTIGATOR AND A RUNNER, AND THE
7  COURT HAD TO CALL PCC AGAIN.
8     THE COURT:  OKAY.
9     MR. CHRISTOPHER:  PCC SENT A LETTER TO THE
10  COURT STATING TO THE COURT THAT THEY WERE UNAWARE OF ANY
11  COURT ORDER FOR ME TO BE PROVIDED A RUNNER AND AN
12  INVESTIGATOR.
13     THE COURT:  OKAY, BUT NOW --
14     MR. CHRISTOPHER:  AS OF THIS DATE, I HAVE NOT
15  SEEN THE RUNNER.  I WOULD LIKE TO STATE THAT FOR THE
16  RECORD.
17     THE COURT:  OKAY.  HOW WERE YOU GIVEN THE
18  DISCOVERY THEN?
19     MR. CHRISTOPHER:  THE LAW LIBRARY AT THE
20  CENTRAL COUNTY JAIL GAVE ME THIS DISCOVERY.
21     THE COURT:  WELL, HOW DID THEY GET IT?
22     MR. CHRISTOPHER:  I DON'T KNOW.
23     MS. GRASSO:  YOUR HONOR, WE HAVE RECEIPTS THAT
24  THERE IS AN INVESTIGATOR THAT HAS BEEN PICKING UP
25  MR. CHRISTOPHER'S ITEMS, AND WE HAVE BEEN PERSONALLY
26  CALLING THAT INVESTIGATOR WHEN WE HAVE SOMETHING TO PUT
27  OUT.
28     THE COURT:  WELL, MR. CHRISTOPHER, IT SOUNDS

1    LIKE YOU HAVE AN INVESTIGATOR AND/OR A RUNNER, DEPENDING

2    ON WHETHER THE INVESTIGATOR NEEDS THAT.  AND B, IT

3    SOUNDS LIKE THEY HAVE ALREADY PROVIDED YOU WITH A DISK

4    THAT HAS THE COLOR PHOTOGRAPHS ON THERE; THAT MEANS THAT

5    YOU HAVE EVERYTHING THAT THEY HAVE.  SO CALL YOUR

6    WITNESS.

7            MS. GRASSO:  THANK YOU, YOUR HONOR.  OFFICER

8    ROSS.

9

10                   SAMUEL ROSS,

11   CALLED AS A WITNESS BY AND ON BEHALF OF THE PEOPLE,

12   HAVING BEEN FIRST DULY SWORN, TESTIFIED AS FOLLOWS:

13

14                DIRECT EXAMINATION

15   BY MS. GRASSO:

16       Q.   GOOD MORNING.  WOULD YOU PLEASE STATE YOUR

17   FIRST AND LAST NAME AND SPELL THAT FOR THE RECORD.

18       A.   SAMUEL ROSS.  R-O-S-S.

19       Q.   WHAT DO YOU DO FOR A LIVING?

20       A.   I CURRENTLY AM EMPLOYED WITH THE SAN DIEGO

21   POLICE DEPARTMENT.

22       Q.   AND HOW LONG HAVE YOU BEEN A SWORN PEACE

23   OFFICER?

24       A.   ABOUT TWO AND A HALF YEARS.

25       Q.   AND, BRIEFLY, WOULD YOU STATE YOUR TRAINING TO

26   BECOME A PEACE OFFICER?

27       A.   I WENT THROUGH A SIX-MONTH REGIONAL ACADEMY,

28   ACQUIRED MY POST CERTIFICATE.

1    THE COURT:  MR. ROSS, YOU HAVE TO SPEAK LOUDER

2  AND IN THE MICROPHONE SO THAT EVERYBODY CAN HEAR.

3    THE WITNESS:  SORRY.  WENT THROUGH A SIX-MONTH

4  REGIONAL TRAINING, POLICE TRAINING AND ACQUIRED MY POST

5  CERTIFICATE.  THEREAFTER, I WENT THROUGH FOUR MONTHS OF

6  PHASE TRAINING WITH AN EXPERIENCED TRAINING OFFICER, AND

7  SINCE THEN HAVE BEEN ON PATROL IN SOUTH EAST DIVISION

8  SDPD.

9  BY MS. GRASSO:

10    Q.    AND DID YOUR TRAINING ENCOMPASS, AND YOUR

11  CERTIFICATE ENCOMPASS, TESTIFYING AT PRELIMINARY HEARING

12  UNDER PROPOSITION 115?

13    A.    YES.

14    Q.    WERE YOU ON DUTY ON DECEMBER 5TH OF 2006 AT

15  ABOUT 1:15 P.M.?

16    A.    YES, I WAS.

17    Q.    AND DID YOU RECEIVE A DISPATCH TO RESPOND TO

18  THE SCENE AT ABOUT THAT TIME AT 398 SOUTH MEADOWBROOKE

19  DRIVE, NUMBER 44C, IN SAN DIEGO?

20    A.    YES, I WAS.

21    Q.    AND THAT IS IN SAN DIEGO COUNTY?

22    A.    CORRECT.

23    Q.    THANK YOU.  NOW, WHAT TYPE OF RESIDENCE WAS

24  398 SOUTH MEADOWBROOKE DRIVE?

25    A.    IT'S AN APARTMENT COMPLEX.

26    Q.    AND WHOM DID YOU MEET UPON ARRIVAL?

27    A.    I MET THE VICTIM, BARBARA BROWN, I BELIEVE IT

28  WAS.

1      Q.    AND DID YOU GET A STATEMENT FROM MS. BROWN?

2      A.    YES, I DID.

3      Q.    NOW, LET ME ASK YOU THIS, DID YOU ULTIMATELY

4  ARREST SOMEONE AT THE LOCATION 398 SOUTH MEADOWBROOKE

5  DRIVE IN CONNECTION WITH THIS INVESTIGATION?

6      A.    YES, I DID.

7      Q.    AND DO YOU SEE THAT PERSON IN THE COURTROOM

8  HERE TODAY?

9      A.    YES, I DO.

10      Q.    WOULD YOU PLEASE POINT TO WHERE THAT PERSON IS

11  SEATED AND DESCRIBE SOMETHING HE OR SHE IS WEARING?

12      A.    SITTING OVER HERE IN THE BLUE SHIRT.

13          MS. GRASSO:  MAY THE RECORD REFLECT THE

14  WITNESS HAS IDENTIFIED THE DEFENDANT?

15          THE COURT:  YES.

16          MS. GRASSO:  THANK YOU, YOUR HONOR.

17  BY MS. GRASSO:

18      Q.    NOW, OFFICER ROSS, YOU SAID THAT YOU GOT A

19  STATEMENT FROM MS. BROWN; IS THAT CORRECT?

20      A.    YES.

21      Q.    DID SHE TELL YOU WHETHER SHE KNEW THE

22  DEFENDANT?

23      A.    YES, SHE DID.

24      Q.    AND HOW DID SHE KNOW THE DEFENDANT?

25      A.    THEY WERE IN A DATING RELATIONSHIP.

26      Q.    AND DID SHE CALL 911 FOR HELP?

27      A.    YES, SHE DID.

28      Q.    DID SHE TELL YOU WHY?

1     A.    SHE SAID SHE HAD BEEN IN AN INCIDENT WITH HER

2   BOYFRIEND INVOLVING DOMESTIC VIOLENCE.

3     Q.    LET'S START FROM THE BEGINNING.  ACCORDING TO

4   MS. BROWN'S STATEMENT, WHEN DID THIS ALLEGED INCIDENT

5   TAKE PLACE?

6     A.    IT TOOK PLACE THE DAY BEFORE SHE CALLED, THE

7   EVENING OF THE 4TH.

8     Q.    DECEMBER 4TH, '06?

9     A.    YES.

10    Q.    AND WHERE DID SHE SAY THE INCIDENT TOOK PLACE?

11    A.    IT TOOK PLACE IN HER VEHICLE, I BELIEVE IT

12  WAS, ON THE 125 HEADING TOWARDS THE 8.

13    Q.    DID SHE SAY WHAT CITY THEY WERE IN?

14    A.    I BELIEVE IT IS THE BORDER FOR SAN DIEGO AND

15  SPRING VALLEY; I AM NOT SURE WHICH JURISDICTION IT WOULD

16  FALL UNDER.

17    Q.    BUT STILL IN SAN DIEGO COUNTY?

18    A.    YES.

19    Q.    AND WHOM DID SHE TELL YOU WAS IN THE CAR?

20    A.    HER BOYFRIEND, I BELIEVE IT WAS, CHRISTOPHER

21  CARRE OR THE OTHER WAY AROUND.  I AM NOT SURE WHICH ONE

22  IT CAME OUT TO BE.

23    Q.    HER BOYFRIEND, THE DEFENDANT?

24    A.    YES.

25    Q.    NOW, WHO WAS DRIVING, ACCORDING TO HER

26  STATEMENT?

27    A.    CHRISTOPHER.

28    Q.    AND WHERE WAS SHE SEATED?

1    A.    SHE WAS IN THE FRONT PASSENGER'S SEAT.

2    Q.    ANYBODY ELSE IN THE CAR?

3    A.    NO.

4    Q.    AND DID MS. BROWN TELL YOU HOW THE INCIDENT

5  BEGAN?

6    A.    I REMEMBER IT WAS A HEATED ARGUMENT.

7          THE COURT:  IT'S A YES OR NO QUESTION.  DID

8  SHE TELL YOU HOW IT BEGAN?

9          THE WITNESS:  YES, SHE DID.

10  BY MS. GRASSO:

11    Q.    DO YOU RECALL WHAT SHE TOLD YOU?

12    A.    NOT OFF THE TOP OF MY HEAD.

13    Q.    BUT YOU MENTIONED AN ARGUMENT?

14    A.    YES.

15          MR. CHRISTOPHER:  OBJECTION.  LEADING THE

16  WITNESS.

17          THE COURT:  OVERRULED.

18  BY MS. GRASSO:

19    Q.    DURING THE ARGUMENT, DID MS. BROWN TELL YOU

20  WHAT HAPPENED NEXT?

21    A.    YES, SHE SAID DURING THE ARGUMENT CHRISTOPHER

22  REACHED OVER AND PUNCHED HER IN HER EYE; IT WAS HER LEFT

23  EYE.

24    Q.    DID SHE SAY WHAT HAND MR. CHRISTOPHER USED?

25    A.    I BELIEVE IT WAS HIS RIGHT HAND.

26    Q.    AND YOU SAID HER LEFT EYE?

27    A.    HER LEFT EYE, CORRECT.

28    Q.    DID THE DEFENDANT SAY ANYTHING TO MS. BROWN,

1    ACCORDING TO HER STATEMENT, AS HE PUNCHED HER IN THE

2    EYE?

3        A.    I BELIEVE THERE IS A QUOTE IN THERE OF, "I AM

4    GOING TO KILL YOU, BITCH."

5        Q.    AND WHERE DID THE DEFENDANT ULTIMATELY DRIVE

6    TO?

7        A.    BACK TO THE RESIDENCE OF 398 SOUTH

8    MEADOWBROOKE.

9        Q.    NOW, ACCORDING TO HER STATEMENTS, OTHER THAN,

10   I BELIEVE YOU SAID, "I AM GOING TO KILL YOU BITCH,"

11   OTHER THAN THAT STATEMENT, AFTER PUNCHING HER IN THE

12   EYE, DID, ACCORDING TO HER STATEMENT TO YOU AND MS.

13   BROWN, DID MR. CHRISTOPHER SAY ANYTHING ELSE TO HER?

14       A.    LATER ON HE SAID SOMETHING TO THE EFFECT OF I

15   AM NOT GOING TO LET YOU GO TO WORK; I DON'T REMEMBER THE

16   EXACT QUOTE.

17       Q.    ACCORDING TO MS. BROWN'S STATEMENT WAS THE

18   QUOTE, "I AM GOING TO KILL YOU, BITCH," WAS THAT THE

19   ONLY TIME MR. CHRISTOPHER THREATENED HER?

20       A.    THIS DATE OR IN THE RELATIONSHIP?

21       Q.    NO, WE ARE REFERRING JUST TO THE INCIDENT?

22       A.    OKAY.  YES.

23       Q.    THAT WAS THE ONLY TIME?

24            MR. CHRISTOPHER:  OBJECTION.  ASKED AND

25   ANSWERED.

26            THE COURT:  WELL, THE LAST ANSWER HAS BEEN

27   ALREADY ANSWERED, SO.

28            MR. CHRISTOPHER:  YES.

1       THE COURT:  SO TO THAT QUESTION, IT IS NOT

2  TIMELY AND THE OBJECTION IS OVERRULED.  AND I DON'T KNOW

3  WHAT THE NEXT QUESTION IS YET, SO YOU MIGHT BE PREMATURE

4  ON THE OBJECTION.

5       MR. CHRISTOPHER:  ALL RIGHT.

6  BY MS. GRASSO:

7       Q.   OFFICER ROSS, LET ME ASK YOU THIS, AFTER THE

8  INCIDENT, WHILE YOU WERE TAKING MS. BROWN'S STATEMENT,

9  DID YOU TAKE ANY NOTES?

10      A.   DURING THE STATEMENTS, YES.

11      Q.   AND DID YOU ULTIMATELY WRITE A REPORT

12 REGARDING THIS INCIDENT?

13      A.   YES, I DID.

14      Q.   DID YOU WRITE THAT REPORT WHEN THE INCIDENT

15 WAS STILL FRESH IN YOUR MIND?

16      A.   YES, I DID.

17      Q.   AND WOULD LOOKING AT YOUR REPORT REFRESH YOUR

18 RECOLLECTION AS FAR AS WHETHER MR. CHRISTOPHER FURTHER

19 THREATENED MS. BROWN?

20      A.   YES, IT WOULD.

21      Q.   AND FOR THE RECORD, I AM REFERRING TO PAGES 9

22 AND 10 OF THE REPORT.  IF YOU COULD READ THE STATEMENT

23 FROM MS. BROWN AND LOOK UP.  IF YOU COULD READ IT

24 SILENTLY TO YOURSELF AND LOOK UP WHEN YOU ARE DONE,

25 PLEASE.

26      A.   OKAY.

27      Q.   ACCORDING TO MS. BROWN'S STATEMENT TO YOU,

28 AFTER MR. CHRISTOPHER PUNCHED HER AND MADE THE INITIAL

1  THREAT, DID HE THREATEN HER AGAIN ANY TIME LATER THAT

2  DAY OR THE FOLLOWING MORNING?

3      A.   YES, HE CONTINUED THREATENING HER ON THE WAY

4  BACK TO THE RESIDENCE.

5      Q.   DID MS. BROWN SPECIFY WHAT EXACTLY

6  MR. CHRISTOPHER SAID?

7      A.   NO, SHE DIDN'T.

8      Q.   WHAT DID SHE SAY HAPPENED ONCE THEY ARRIVED AT

9  HOME?  "THEY" MEANING MR. CHRISTOPHER AND MS. BROWN.

10      A.   THEY WENT BACK INTO THE APARTMENT, AND I

11  BELIEVE THEY WENT TO BED.

12      Q.   SHE DID NOT CALL THE POLICE ON THE NIGHT OF

13  THE 4TH?

14      A.   NO, SHE DIDN'T, NO.

15      Q.   AND WHAT HAPPENED THE NEXT MORNING, ACCORDING

16  TO HER STATEMENT?

17      A.   THE NEXT MORNING THEY WOKE UP IN THE MORNING.

18          MR. CHRISTOPHER:  OBJECTION.  ASKED AND

19  ANSWERED.

20          THE COURT:  OVERRULED.  GO AHEAD.

21          THE WITNESS:  THEY WOKE UP IN THE MORNING, AND

22  I BELIEVE SHE WAS SUPPOSED TO GO TO WORK; HE WOULD NOT

23  ALLOW HER TO GO TO WORK.

24  BY MS. GRASSO:

25      Q.   I AM SORRY, I MISSED THAT STATEMENT.  SHE WAS

26  SUPPOSED TO GO TO WORK AND?

27      A.   HE WOULD NOT ALLOW HER TO GO TO WORK.

28      Q.   MEANING MR. CHRISTOPHER?

1      A.    CORRECT.  I BELIEVE SHE WAITED FOR HIM TO GO

2  BACK TO SLEEP.  SHE WAS UNABLE TO ALL THE POLICE, SHE

3  DIDN'T HAVE A PHONE IN THE APARTMENT.  SHE HAD TO GO TO

4  THE RENTAL OFFICE TO MAKE THE CALL.  SHE HAD TO WAIT FOR

5  HIM TO GO BACK TO SLEEP LATER THAT MORNING UNTIL SHE

6  COULD GET OUT OF THE APARTMENT TO MAKE THAT CALL.

7      Q.    LET ME BACK UP A LITTLE BIT.  YOU SAID THAT

8  MS. BROWN HAD TO -- OR WAS DUE TO BE AT WORK?

9      A.    CORRECT.

10      Q.    AND MR. CHRISTOPHER WOULD NOT LET HER?

11      A.    CORRECT.

12          MR. CHRISTOPHER:  OBJECTION.  LEADING THE

13  WITNESS.

14          THE COURT:  NOT YET.  BUT I DON'T WANT YOU TO

15  LEAD HIM ON THIS QUESTION.

16  BY MS. GRASSO:

17      Q.    WHAT, SPECIFICALLY, DID MS. BROWN SAY?

18          MR. CHRISTOPHER:  OBJECTION.  FOUNDATION.

19          THE COURT:  OVERRULED.

20  BY MS. GRASSO:

21      Q.    THAT LED HER TO BELIEVE SHE WAS NOT ALLOWED TO

22  GO TO WORK?

23      A.    HE SAID, I BELIEVE THE QUOTE WAS, "YOU ARE NOT

24  GOING TO WORK, YOU STUPID BITCH."

25          MR. CHRISTOPHER:  I DIDN'T UNDERSTAND WHAT HE

26  SAID.

27          (RECORD READ BY THE REPORTER.)

28

1   BY MS. GRASSO:

2       Q.   AND YOU ALSO MENTIONED THERE WAS NO PHONE IN

3   THE APARTMENT; IS THAT CORRECT?

4       A.   CORRECT.

5       Q.   NOW, DID MS. BROWN DESCRIBE FOR YOU WHAT HER

6   REACTION TO MR. CHRISTOPHER'S THREATS WERE?

7       A.   SHE BELIEVED THAT THE THREATS COULD AND WOULD

8   BE CARRIED OUT BASED ON PREVIOUS ASSAULTS.

9       Q.   NOW, YOU ALSO STATED THAT SHE, MS. BROWN,

10  WAITED FOR MR. CHRISTOPHER TO FALL ASLEEP AND THEN WHAT

11  HAPPENED, ACCORDING TO HER STATEMENT?

12          MR. CHRISTOPHER:  OBJECTION.  ASKED AND

13  ANSWERED.

14          THE COURT:  OVERRULED.

15          THE WITNESS:  AFTER HE FELL ASLEEP, SHE WAITED

16  A COUPLE OF HOURS TO MAKE SURE HE WAS SOUND ASLEEP, AND

17  SHE LEFT THE APARTMENT, WENT OVER TO THE RENTAL OFFICE

18  OF THE APARTMENT COMPLEX, AND THAT IS WHERE SHE CALLED

19  THE POLICE.

20  BY MS. GRASSO:

21      Q.   OFFICER ROSS, LET ME ASK YOU THIS, WHEN YOU

22  SPOKE TO MS. BROWN, DO YOU RECALL WHAT HER DEMEANOR WAS?

23      A.   SHE WAS SCARED, CRYING, ANGRY.

24      Q.   DID SHE HAVE ANY INJURIES ON HER PERSON THAT

25  YOU COULD SEE?

26      A.   YES, SHE DID.

27      Q.   AND COULD YOU DESCRIBE THOSE INJURIES?

28      A.   HER LEFT EYE, I BELIEVE IT WAS BELOW HER EYE,

1  WAS VERY SWOLLEN AND PURPLE TO THE POINT WHERE THE EYE

2  WAS ALMOST SWOLLEN SHUT.

3       Q.   DID YOU PHOTOGRAPH HER INJURIES?

4       A.   YES, I DID.

5            MS. GRASSO:  YOUR HONOR, MAY I APPROACH?

6            THE COURT:  YES.

7  BY MS. GRASSO:

8       Q.   THANK YOU.  I HAVE WHAT HAS BEEN PREVIOUSLY

9  MARKED PEOPLE'S EXHIBIT 1.

10           (PEOPLE'S EXHIBIT NUMBER 1

11           MARKED FOR IDENTIFICATION.)

12           THE COURT:  AND THESE ARE THE PHOTOGRAPHS YOU

13 WERE REFERRING TO BEFORE, MR. CHRISTOPHER?

14           MR. CHRISTOPHER:  YES, SIR.

15 BY MS. GRASSO:

16      Q.   OKAY.  MR. ROSS, DO YOU RECOGNIZE THAT

17 PHOTOGRAPH?

18      A.   YES, I DO.

19      Q.   AND HOW DO YOU RECOGNIZE IT?

20      A.   I REMEMBER THE CLOTHING SHE WAS WEARING.  I

21 REMEMBER HER IN PERSON FROM WHEN I SPOKE TO HER THAT

22 DAY.

23      Q.   IS IT A PHOTOGRAPH THAT YOU PERSONALLY TOOK?

24      A.   YES.

25      Q.   AND DOES THAT PHOTOGRAPH CORRECTLY SHOW THE

26 APPEARANCE -- MS. BROWN'S APPEARANCE AS YOU SAW HER ON,

27 I BELIEVE, DECEMBER 5TH?

28      A.   YES.

1    Q.   AND I ALSO HAVE PEOPLE'S -- WHAT HAS BEEN

2    PREVIOUSLY MARKED PEOPLE'S EXHIBIT 2.  DO YOU RECOGNIZE

3    THAT PHOTOGRAPH, OFFICER ROSS?

4           (PEOPLE'S EXHIBIT NUMBER 2

5           MARKED FOR IDENTIFICATION.)

6           THE WITNESS:  YES, I DO.

7    BY MS. GRASSO:

8    Q.   AND HOW DO YOU RECOGNIZE THAT PHOTOGRAPH?

9    A.   THE SAME, THE CLOTHING SHE WAS WEARING.  I

10   REMEMBER HER IN PERSON FROM THE MEETING.

11   Q.   AND YOU PERSONALLY TOOK THAT PHOTOGRAPH?

12   A.   YES, I DID.

13   Q.   AND THAT PHOTOGRAPH ACCURATELY SHOWS WHAT SHE

14   LOOKED LIKE WHEN YOU MET WITH HER ON DECEMBER 5TH?

15   A.   YES.

16   Q.   "HER" MEANING MS. BROWN?

17   A.   YES.

18   Q.   THANK YOU.  OFFICER, WHEN YOU ARRESTED

19   MR. CHRISTOPHER, DID HE HAVE ANYTHING ON HIS PERSON?

20   A.   YES, I BELIEVE HE HAD A SCISSORS AND MS.

21   BROWN'S VEHICLE KEYS IN HIS POCKET.

22   Q.   HOW DO YOU KNOW THAT THOSE KEYS BELONGED TO

23   MS. BROWN?

24   A.   BEFORE I CONTACTED CHRISTOPHER SHE HAD

25   STATED -- WHEN I MET HER, SHE WAS IN FRONT OF THE

26   APARTMENT COMPLEX.  SHE STATED SHE WAS WAITING THERE

27   BECAUSE HE HAD HER CAR KEYS AND SHE WANTED TO MAKE SURE

28   HE DIDN'T LEAVE IN HER VEHICLE.  I CONFIRMED AFTERWARDS

1   THOSE WERE HER KEYS.

2       Q.   DID SHE SAY WHETHER THIS WAS A VEHICLE THAT

3   SHE AND MR. CHRISTOPHER SHARED?

4       A.   I DON'T RECALL.

5       Q.   BUT SHE DID REFER TO IT AS HER KEYS?

6       A.   YES.

7       Q.   LET ME ASK YOU THIS, DID MS. BROWN STATE

8   WHETHER THEY LIVED TOGETHER, HER AND MR. CHRISTOPHER

9   LIVED TOGETHER, OR IN SEPARATE RESIDENCE?

10      A.   THEY LIVED TOGETHER.

11      Q.   AND DID MS. BROWN INDICATE TO YOU WHETHER SHE

12  FELT, AFTER HEARING MR. CHRISTOPHER'S THREATS, WHETHER

13  SHE FELT THAT SHE COULD LEAVE THE APARTMENT?

14      A.   SHE FELT LIKE SHE COULD NOT LEAVE THE

15  APARTMENT AFTER THOSE THREATS.

16          MS. GRASSO:   THANK YOU, YOUR HONOR.   NOTHING

17  FURTHER.

18          THE COURT:   MR. CHRISTOPHER, YOU MAY

19  CROSS-EXAMINE.

20

21                  CROSS-EXAMINATION

22  BY MR. CHRISTOPHER:

23      Q.   SAMUEL ROSS; IS THAT CORRECT?

24      A.   YES.

25      Q.   YOU STATED YOU HAD LESS THAN FIVE YEARS

26  EXPERIENCE WITH THE SAN DIEGO POLICE?

27      A.   THAT IS CORRECT.

28      Q.   YOU STATED YOUR TRAINING WAS SIX MONTHS

1  REGIONAL TRAINING?

2      A.   YES.

3      Q.   AND FOUR MONTHS OF BASIC TRAINING?

4      A.   CORRECT.

5      Q.   DO YOU HAVE ANY INVESTIGATIVE TRAINING?  HOW

6  MANY MONTHS?  MAYBE I SHOULD REPHRASE IT.  WAS THERE A

7  COURSE ENTITLED "INVESTIGATIVE TRAINING"?

8      A.   THERE WAS A COURSE IN INVESTIGATIVE WRITING

9  THROUGH THE REGIONAL ACADEMY.

10     Q.   WAS THERE A COURSE, SIR, YES OR NO, WAS THERE

11 A COURSE, INVESTIGATIVE TRAINING?  WAS THAT WHAT YOU ARE

12 TALKING ABOUT INCLUDED IN YOUR BASIC TRAINING?

13     A.   YES.

14     Q.   HOW MANY MONTHS WAS THIS COURSE THAT YOU TOOK

15 IN INVESTIGATIVE TRAINING?

16     A.   I BELIEVE ABOUT TWO MONTHS WAS THAT PORTION OF

17 THE COURSE.

18     Q.   THE PROSECUTOR ASKED YOU ABOUT YOUR TRAINING,

19 WHY DID YOU NOT MENTION THE TWO MONTH'S INVESTIGATIVE

20 TRAINING?

21     A.   THAT IS JUST A BASIC CURRICULUM OF THE SAN

22 DIEGO REGIONAL TRAINING ACADEMY.

23     Q.   DO YOU HAVE A CERTIFICATE FOR PROPOSITION 115

24 TESTIMONY?

25     A.   I NOT KNOW IF A CERTIFICATE CAME WITH IT OR

26 NOT.

27          MR. CHRISTOPHER:  YOUR HONOR, THIS WITNESS

28 CAN'T TESTIFY.

1          THE COURT:  NO, THERE IS NO REQUIREMENT THAT
2     THERE BE A CERTIFICATE, MR. CHRISTOPHER.  HE HAS
3     TESTIFIED HE DID THE POST CERTIFIED PROP 115 TEST, OR A
4     CLASS AND THAT HE HAS PASSED THE CLASS.  I DON'T HAVE TO
5     SEE A CERTIFICATE TO ALLOW HIM TO TESTIFY.
6          MR. CHRISTOPHER:  BUT, YOUR HONOR, I BEG TO
7     DIFFER.  HE SAID HE HAD SIX MONTHS REGIONAL TRAINING.
8          THE COURT:  RIGHT.
9          MR. CHRISTOPHER:  HE SAID HE HAD FOUR MONTHS
10    BASIC TRAINING.  UPON ME CROSS-EXAMINING THE WITNESS,
11    THE WITNESS SAID HE HAD TWO MONTHS OF INVESTIGATIVE
12    TRAINING.  I MEAN, IN THE TRAINING, IT MAY HAVE
13    MENTIONED PROP 115, BUT HE DID NOT HAVE A SPECIFIC
14    COURSE FOR PROP 115.
15         THE COURT:  DID YOU HAVE A SPECIFIC COURSE FOR
16    TESTIFYING AT PRELIMINARY HEARINGS UNDER PROP 115?
17         THE WITNESS:  YES, YOUR HONOR.
18    BY MR. CHRISTOPHER:
19       Q.  HOW MANY MONTHS WAS IT?  HOW MANY WEEKS?  HOW
20    MANY HOURS WAS IT?
21       A.  I DON'T RECALL.  JUST A COUPLE OF HOURS.  IT
22    WAS A ONE-DAY COURSE.
23         THE COURT:  SO YOU HAD TWO HOURS OF PROP 115
24    HEARING TRAINING?
25         THE WITNESS:  YES.
26         MR. CHRISTOPHER:  YOUR HONOR, ARE YOU
27    ACCEPTING THAT AS --
28         THE COURT:  THAT IS ALL THE LAW REQUIRES, THAT

1    HE COMPLETE THE POLICE OFFICER'S STANDARDS AND TRAINING

2    PROP 115 COURSE, HOWEVER LONG THAT IS.  I DIDN'T APPROVE

3    THE CURRICULUM, THAT IS --

4            MR. CHRISTOPHER:  TWO HOURS IS.  BUT IT IS ON

5    THE RECORD.

6            THE COURT:  OKAY.

7            MR. CHRISTOPHER:  THANK YOU.

8    BY MR. CHRISTOPHER:

9        Q.   GOING BACK TO YOUR POLICE REPORT, CAN YOU GO

10   TO PAGE 4.

11           MS. GRASSO:  OBJECTION, YOUR HONOR.

12           THE COURT:  YOU PROBABLY NEED TO ASK A

13   QUESTION FIRST.

14   BY MR. CHRISTOPHER:

15       Q.   OKAY.  YOU STATED THAT BARBARA BROWN TOLD YOU

16   I WAS LIVING WITH HER; IS THAT CORRECT?

17       A.   YES.

18       Q.   FOR HOW LONG?

19       A.   I DON'T KNOW ABOUT THE LIVING PART.

20       Q.   BACK IN YOUR REPORT SHE STATED I WASN'T LIVING

21   WITH HER AT ALL.  I MEAN, IS YOUR REPORT CORRECT,

22   FACTUAL?

23       A.   YES.

24       Q.   ALSO, IN YOUR REPORT IT SAYS RELATIONSHIP

25   BETWEEN VICTIM AND SUSPECT, THERE IS A BOX, SQUARE BOX

26   FOR SPOUSE, AND SQUARE BOX FOR COHABITANT, AND A SQUARE

27   BOX FOR ENGAGED, A SQUARE BOX FOR SAME SEX, AND THERE IS

28   A SQUARE BOX FOR DATING.  WHICH BOX DID YOU MARK?

1    A.    I BELIEVE IT WAS A DATING RELATIONSHIP.

2    Q.    YOU DID NOT CHECK SPOUSE?

3    A.    NO, I DON'T BELIEVE SO.

4    Q.    CAN YOU GO TO PAGE 4, SIR.

5    A.    I DON'T HAVE PAGE 4.

6    THE COURT:  DO YOU HAVE YOUR REPORT WITH YOU?

7    THE WITNESS:  I JUST HAVE PAGE 9 AND 10, SIR.

8    THE COURT:  NOW WE ARE GOING TO NEED THE

9    PROSECUTOR TO LEND YOU HER COPY, BECAUSE MR. CHRISTOPHER

10    IS NOT GOING TO BE APPROACHING THE WITNESS.

11    THE WITNESS:  OKAY.  PAGE 4.

12    BY MR. CHRISTOPHER:

13    Q.    PAGE 4.  SIR, SHOULD I REPEAT THE QUESTION?

14    THE COURT:  YES.

15    BY MR. CHRISTOPHER:

16    Q.    YOU SEE RELATIONSHIP BETWEEN VICTIM AND

17    SUSPECT?

18    THE COURT:  DO YOU SEE THAT?

19    THE WITNESS:  YES.

20    BY MR. CHRISTOPHER:

21    Q.    OKAY.  YOU HAVE A BOX SPOUSE THAT YOU COULD

22    HAVE CHECKED; YOU HAVE A BOX COHABITANTS THAT YOU COULD

23    HAVE CHECKED; YOU HAVE BOX ENGAGED THAT YOU COULD HAVE

24    CHECKED; YOU HAVE BOX SAME SEX WHICH YOU COULD HAVE

25    CHECKED; YOU HAVE A BOX DATING THAT YOU COULD HAVE

26    CHECKED.  THE BOX THAT YOU CHECKED WAS DATING; IS THAT

27    CORRECT?

28    A.    CORRECT.

1    Q.    YOU DID NOT CHECK SPOUSE; IS THAT CORRECT?

2    A.    CORRECT.

3    Q.    DID BARBARA BROWN EVER TELL YOU I WAS HER

4  SPOUSE?

5    A.    NO.

6    Q.    BARBARA BROWN TOLD YOU THE RELATIONSHIP ME AND

7  HER HAD WAS DATING OR A SPOUSE?

8    A.    DATING.

9    Q.    WHERE DID THE ALLEGED, YOU SAY SPOUSAL ABUSE

10  OCCUR?

11    A.    FROM THE INJURY; IT WAS IN THE VEHICLE.

12    Q.    NO, WHERE WAS THE VEHICLE WHEN THE INJURY

13  OCCURRED?  MAYBE I SHOULD REPHRASE THAT.

14    A.    IT WAS ON THE 125 BEFORE THE 8, WHILE YOU WERE

15  HEADED TO EL CAJON.  I BELIEVE IT WAS NORTHBOUND 125

16  BEFORE THE 8.

17    Q.    IT WAS ON NORTHBOUND 125.  YOU STATED WHEN THE

18  PROSECUTOR HAD EXAMINED YOU ON THIS, YOU STATED WE WERE

19  HEADED TOWARDS HOME WHEN IT HAPPENED; AM I CORRECT?

20    A.    NO, YOU ENDED UP BACK AT HOME.

21    Q.    OKAY.  NORTHBOUND 125.  WHERE ON NORTHBOUND

22  125?

23    A.    I DO NOT KNOW.

24    Q.    MS. BROWN DIDN'T TELL YOU WHERE ON 125?

25    A.    NO, NOT SPECIFICALLY.

26    Q.    YOU SAID YOU HAD INVESTIGATIVE TRAINING.

27    A.    YES.

28    Q.    YOU DID A LOT OF POLICE REPORTS, I WOULD TAKE

1    IT; AM I CORRECT?

2         A.   YES.

3         Q.   IN YOUR EXPERIENCE, ONE THAT HAS BEEN STRUCK

4    OR GOT IN A FIGHT OR SOMETHING, DO THEY FORGET WHERE IT

5    HAPPENED?

6         A.   SOMETIMES.

7         Q.   WITHIN A 24-HOUR PERIOD?

8         A.   NOT REALLY A TIME FRAME.

9         Q.   I SAID -- WELL, WITHIN AN EIGHT-HOUR PERIOD,

10   DOES AN INDIVIDUAL FORGET WHERE THEY WERE STRUCK?

11        A.   SOMETIMES.

12        Q.   HAVE YOU EVER IN YOUR LIFE GOT INTO A FIGHT?

13             MS. GRASSO:  OBJECTION, YOUR HONOR.

14             THE COURT:  SUSTAINED.

15   BY MR. CHRISTOPHER:

16        Q.   DO YOU BELIEVE IT IS POSSIBLE FOR AN

17   INDIVIDUAL TO FORGET WHERE THEY HAD AN ARGUMENT OR A

18   FIGHT FOUR HOURS PRIOR TO IT?

19             MS. GRASSO:  OBJECTION, YOUR HONOR, RELEVANCE.

20             THE COURT:  IT CALLS FOR SPECULATION AS TO

21   WHAT HE THINKS ABOUT OTHER PEOPLE.

22             MR. CHRISTOPHER:  YES, OKAY.

23   BY MR. CHRISTOPHER:

24        Q.   DID BARBARA BROWN TELL YOU THAT I DENIED HER

25   GOING TO THE TELEPHONE?

26        A.   I AM SORRY, I COULDN'T HEAR THE FULL QUESTION.

27        Q.   YOU MADE A STATEMENT THAT BARBARA BROWN SAID

28   THAT I SAID THAT SHE SHOULDN'T GO TO WORK?

1     A.   CORRECT.

2     Q.   DID SHE TELL YOU THAT I SAID SHE COULD NOT USE

3  THE TELEPHONE?

4     A.   THERE WAS NO TELEPHONE IN THE APARTMENT.

5     Q.   THAT IS NOT THE QUESTION, SIR.

6     A.   IN THE STATEMENT THAT SHE GAVE, SHE IMPLIED

7  THAT YOU WOULD NOT LET HER GO TO --

8          THE COURT:  SHE WHAT?  DID YOU SAY SHE IMPLIED

9  OR DID YOU SAY SHE SAID SOMETHING?

10         THE WITNESS:  SHE STATED THAT CHRISTOPHER

11 WOULD NOT LET HER LEAVE THE APARTMENT, IN THAT QUOTE.

12 BY MR. CHRISTOPHER:

13    Q.   THAT IS NOT IN YOUR REPORT THOUGH, SIR.

14         THE COURT:  THAT IS A QUESTION.  IS THAT IN

15 YOUR REPORT?

16 BY MR. CHRISTOPHER:

17    Q.   IS THAT IN YOUR REPORT, THAT SHE STATED SHE

18 COULD NOT USE THE TELEPHONE?

19         MS. GRASSO:  OBJECTION.  MISSTATES THE ANSWER.

20 THAT IS NOT WHAT THE OFFICER JUST SAID.

21         THE COURT:  WELL, IT'S A DIFFERENT QUESTION.

22 IS IT IN THE REPORT THAT HE STOPPED HER FROM USING THE

23 PHONE?

24         THE WITNESS:  SPECIFICALLY NOT TO USE THE

25 PHONE, NO.

26 BY MR. CHRISTOPHER:

27    Q.   IS IT IN YOUR REPORT THAT SHE STATED I STATED

28 SHE COULD NOT LEAVE THE HOUSE?

1    A.    YES.

2    Q.    WHERE?

3    A.    I WOULD HAVE TO LOOK AT MY REPORT.

4          THE COURT:  GO AHEAD.

5          MR. CHRISTOPHER:  HE DOESN'T HAVE THE REPORT?

6          THE COURT:  NO, HE HAS IT.  HE JUST HAS TO

7    LOOK AT IT.

8          THE WITNESS:  SPECIFICALLY, SHE DID NOT SAY

9    YOU WOULD NOT LET HER LEAVE.  THROUGH HER STATEMENTS

10   THAT I -- THE STATEMENT THAT SHE COULD NOT GET OUT, I

11   BELIEVE THAT SHE WAS, I BELIEVED SHE WAS UNABLE TO

12   LEAVE.

13   BY MR. CHRISTOPHER:

14   Q.    SIR, THE QUESTION IS, DID SHE STATE THAT I

15   STATED SHE COULD NOT LEAVE THE HOUSE?

16   A.    NO.

17   Q.    DID SHE?

18   A.    NO.

19   Q.    WHAT TIME OF NIGHT WAS THIS SUPPOSED TO HAVE

20   HAPPENED?  WHAT TIME DURING THE DAY, MORNING OR

21   AFTERNOON WAS THIS SUPPOSED TO HAVE HAPPENED?

22         MS. GRASSO:  OBJECTION.  COMPOUND.

23         THE COURT:  OVERRULED.  WHAT TIME WAS THIS

24   STATEMENT MADE?

25         THE WITNESS:  THIS STATEMENT OF?

26         THE COURT:  OF NOT BEING ABLE TO GO -- NOT

27   BEING ABLE TO LEAVE THE APARTMENT OR NOT BEING ABLE TO

28   GO TO WORK.  I THINK YOU ARE TALKING ABOUT THE NOT BEING

1  ABLE TO GO TO WORK, RIGHT?

2          MR. CHRISTOPHER:  YES.

3          THE COURT:  WHEN DID SHE TELL YOU.

4  BY MR. CHRISTOPHER:

5      Q.   WHAT TIME DID SHE SAY THIS?

6      A.   SPECIFICALLY, I AM NOT SURE.  AFTER 9:00 A.M.

7  WHEN YOU GUYS WOKE UP, AND BEFORE YOU WENT BACK TO

8  SLEEP.

9      Q.   WHAT TIME DID SHE SAY THE STATEMENT WAS MADE?

10     A.   SHE DID NOT SAY EXACTLY WHEN THE STATEMENT WAS

11  MADE.

12     Q.   I AM BEING CHARGED WITH A FELONY.  I SHOULD

13  SAY THE DEFENDANT IS BEING CHARGED WITH A FELONY,

14  SPOUSAL ABUSE, WHICH STATES THAT IT WAS A SERIOUS

15  INJURY, TRAUMATIC INJURY.  DID YOU CALL PARAMEDICS?

16     A.   PARAMEDICS WERE DISPATCHED WITH THE CALL.

17     Q.   DID THE PARAMEDICS TAKE BARBARA BROWN TO THE

18  HOSPITAL?

19     A.   NO, THEY DID NOT.

20     Q.   DID THEY BELIEVE SHE SHOULD GO TO THE

21  HOSPITAL?

22     A.   WHAT IS THAT?

23     Q.   DID THE PARAMEDICS, AS YOU REMEMBER, BELIEVE

24  THAT SHE SHOULD HAVE BEEN TRANSPORTED TO THE HOSPITAL?

25          MS. GRASSO:  OBJECTION.  SPECULATION.

26          THE COURT:  SUSTAINED.

27  BY MR. CHRISTOPHER:

28     Q.   WAS BARBARA BROWN TRANSPORTED TO THE HOSPITAL?

32

1    A.    NO, SHE WASN'T.

2    Q.    IF IT WAS A SERIOUS INJURY, WOULD SHE HAVE

3    BEEN TRANSPORTED TO THE HOSPITAL?

4    A.    SHE CAN DENY TRANSPORT.

5    Q.    WHAT YEAR AND MONTH DID YOU HAVE THE PROP 115

6    TRAINING?

7         MS. GRASSO:  OBJECTION.  RELEVANCE.

8         THE COURT:  OVERRULED.  YOU CAN ANSWER IT, IF

9    YOU REMEMBER.

10        THE WITNESS:  I DON'T REMEMBER WHAT MONTH,

11   JUST TIME FRAME.

12        THE COURT:  OKAY.

13        THE WITNESS:  BETWEEN JANUARY OF '05 AND JULY

14   OF '05.

15   BY MR. CHRISTOPHER:

16   Q.    BETWEEN JANUARY AND JULY OF '05, YOU HAD TWO

17   HOURS OF PROP 115 TRAINING; IS THAT WHAT YOU SAID?

18   A.    YES.

19   Q.    WAS IT PART OF ANOTHER COURSE OR WAS IT

20   SPECIFICALLY TITLED PROP 115 TRAINING?

21   A.    IT WAS SPECIFICALLY TITLED PROP 115.

22   Q.    THE SAN DIEGO POLICE, IS THAT THE SAME AMOUNT

23   OF TIME THAT THEY GIVE INVESTIGATORS FOR PROP 115

24   TRAINING?

25   A.    INVESTIGATORS START OUT AS PATROL OFFICERS

26   THROUGH THE ACADEMY.

27   Q.    AND THEY -- TO YOUR KNOWLEDGE EVERYONE

28   RECEIVED ONLY TWO HOURS?

```
 1        A.    CORRECT.

 2        Q.    IF YOU ARE ON THE FORCE 10 YEARS, YOU ONLY

 3   RECEIVE TWO HOURS OF PROP 115 TRAINING?

 4        A.    IN GENERAL.

 5        Q.    IS THAT STATE MANDATED?

 6        A.    I DO NOT KNOW.

 7        Q.    WHY DID YOU CHARGE ME WITH SPOUSAL ABUSE IF

 8   THE VICTIM STATED I WASN'T HER SPOUSE?

 9             MS. GRASSO:  OBJECTION, YOUR HONOR,

10   ARGUMENTATIVE.  CALLS FOR LEGAL CONCLUSION.

11             THE COURT:  FOR ONE REASON, HE DOESN'T DECIDE

12   WHAT YOU ARE CHARGED WITH, SO THE OBJECTION IS

13   SUSTAINED.

14   BY MR. CHRISTOPHER:

15        Q.    OKAY.  WHY DID YOU SUBMIT I NEEDED TO BE

16   CHARGED WITH SPOUSAL ABUSE KNOWING THAT I WASN'T THE

17   VICTIM'S, ALLEGED VICTIM'S SPOUSE?

18             MS. GRASSO:  OBJECTION, YOUR HONOR.

19             THE COURT:  IRRELEVANT.  SUSTAINED.  OBJECTION

20   IS SUSTAINED.

21   BY MR. CHRISTOPHER:

22        Q.    COULD YOU HAVE CHARGED ME WITH ANOTHER CHARGE

23   OTHER THAN SPOUSAL ABUSE?

24             MS. GRASSO:  OBJECTION.  THIS OFFICER DOESN'T

25   CHARGE.

26             THE COURT:  SUSTAINED.

27   BY MR. CHRISTOPHER:

28        Q.    IN THE SAME BOX, RELATIONSHIP BETWEEN VICTIM
```

1  AND SUSPECT, YOU TALK ABOUT MINOR AND SERIOUS INCIDENT

2  ON A SCALE OF 1 TO 10.  WHAT WAS THE INJURY?

3          MS. GRASSO:  OBJECTION, YOUR HONOR.  CALLS FOR

4  MEDICAL CONCLUSION.

5          MR. CHRISTOPHER:  THE SAN DIEGO POLICE

6  OFFICER.

7          THE COURT:  I DIDN'T ASK FOR AN ARGUMENT,

8  MR. CHRISTOPHER.  IF I NEED ARGUMENT, I WILL ASK FOR IT.

9  I DON'T NEED AN ARGUMENT ON THIS PARTICULAR QUESTION.

10  AND IT IS, WE ARE NOT LOOKING FOR A MEDICAL OPINION, WE

11  ARE LOOKING FOR JUST, SORT OF, LIKE, YOUR BALLPARK.  AND

12  IT IS NOT PARTICULARLY RELEVANT, I WILL TELL YOU THAT,

13  MR. CHRISTOPHER.  I WILL ALLOW HIM TO ANSWER THE

14  QUESTION.

15          THE WITNESS:  OKAY.  WHAT WAS THE QUESTION

16  AGAIN?

17          THE COURT:  WHERE WOULD YOU PUT THE INJURY ON

18  A SCALE OF 1 TO 10?

19  BY MR. CHRISTOPHER:

20      Q.  ON 1 TO 10, WHERE WOULD YOU PUT THE INJURY?  I

21  MEAN, THE PARAMEDICS LEFT HER.  I MEAN, WHAT WOULD YOU

22  PUT IT AT FROM 1 TO 10?

23          MS. GRASSO:  OBJECTION.  ARGUMENTATIVE.

24          THE COURT:  OVERRULED.  ANSWER THE QUESTION.

25          THE WITNESS:  SEVEN.

26  BY MR. CHRISTOPHER:

27      Q.  OUT OF ALL OF THE INJURIES YOU HAVE EVER

28  SEEN --

71

1     THE COURT:  NOW YOU ARE GOING GETTING INTO AN

2  ARGUMENTATIVE STATE.  WHAT HE THINKS IS TOTALLY

3  IRRELEVANT ON THIS ISSUE, AND OBVIOUSLY THERE ARE FAR

4  MORE SERIOUS INJURIES THAT COULD HAVE OCCURRED HERE.

5  BUT YOU ARE ASKING FOR HIS OPINION, WHICH DOESN'T COUNT

6  FOR ANYTHING.

7     MR. CHRISTOPHER:  THANK YOU, YOUR HONOR.  I

8  HAVE NO FURTHER QUESTIONS.

9     THE COURT:  ANYTHING ELSE.

10     MS. GRASSO:  NO, YOUR HONOR.

11     THE COURT:  YOU MAY STEP DOWN.

12     MS. GRASSO:  AT THIS TIME, THE PEOPLE WOULD

13  LIKE TO SUBMIT EXHIBITS 1 AND 2.

14     THE COURT:  THOSE ARE THE PHOTOGRAPHS?

15     MS. GRASSO:  YES.

16     THE COURT:  ANY OBJECTION TO THOSE BEING

17  RECEIVED?

18     MR. CHRISTOPHER:  NO.

19     THE COURT:  ALL RIGHT.  THOSE ARE RECEIVED.

20     (PEOPLE'S EXHIBIT NUMBER 1

21     RECEIVED INTO EVIDENCE.)

22     (PEOPLE'S EXHIBIT NUMBER 2

23     RECEIVED INTO EVIDENCE.)

24     MS. GRASSO:  THANK YOU, YOUR HONOR.

25     THE COURT:  PEOPLE REST?

26     MS. GRASSO:  YES.

27     THE COURT:  WERE YOU GOING TO BE PRESENTING

28  ANY AFFIRMATIVE EVIDENCE, MR. CHRISTOPHER?

1  MR. CHRISTOPHER: MY INVESTIGATOR SAID HE HAD

2  SUBPOENAED BARBARA BROWN, BUT FROM WHAT I UNDERSTAND, HE

3  TOLD HER SHE WOULD HAVE TO WAIT OUTSIDE, AND THERE IS NO

4  WAY FOR ME TO CHECK.

5  THE COURT: OFFICER, COULD YOU GO OUT AND SEE

6  IF MS. BROWN IS OUT THERE. SHE IS NOT HERE.

7  MR. CHRISTOPHER: NO, I DON'T HAVE ANY.

8  THE COURT: ALL RIGHT. ARGUMENT. MS. GRASSO?

9  MS. GRASSO: RESERVE.

10  THE COURT: MR. CHRISTOPHER, NOW IS THE TIME

11  FOR YOU TO EXPLAIN TO ME WHY THE PEOPLE HAVEN'T MET

12  THEIR BURDEN FOR A PRELIMINARY HEARING ON SHOWING ENOUGH

13  EVIDENCE TO BIND THESE CHARGES OVER FOR TRIAL.

14  MR. CHRISTOPHER: AS FAR AS THE FELONY SPOUSAL

15  ABUSE, YOU HAVE TO BE A COHABITANT FOR IT TO BE DEFINED

16  AS SPOUSAL. AND IN THEIR REPORT, THEY STATED THAT WE

17  WASN'T SPOUSES; THAT SHE WASN'T MY SPOUSE.

18  THE COURT: RIGHT.

19  MR. CHRISTOPHER: I DON'T SEE HOW -- AND NOT

20  ONLY WAS IT NOT IN HIS REPORT, HE HAS TESTIFIED THAT SHE

21  SAID I WASN'T HER SPOUSE EITHER. SO I DON'T SEE HOW I

22  COULD BE CHARGED WITH SPOUSAL ABUSE. I REALLY DON'T.

23  THE COURT: OKAY.

24  MR. CHRISTOPHER: AS FAR AS BEING HELD AGAINST

25  HER WILL, THERE IS NO TESTIMONY FROM HER THAT I DID NOT

26  LET HER LEAVE THE HOUSE. IN FACT, SHE DID LEAVE THE

27  HOUSE. SHE STATED THAT I WAS ASLEEP. IN THE REPORT SHE

28  STATED I WAS ASLEEP MOST OF THE NIGHT. SHE COULD HAVE

1  LEFT ANY TIME DURING THE NIGHT.  SHE LEFT -- SHE WAITED

2  UNTIL THE NEXT DAY.  IN FACT, AFTER I GOT UP, THAT IS

3  WHEN SHE LEFT, YOU KNOW.  AND SO I DON'T THINK THERE WAS

4  A HOLDING AGAINST ONE'S WILL.

5          AS FAR AS THE CRIMINAL THREAT, HE DOESN'T KNOW

6  WHAT TIME.  SHE DIDN'T HAVE ANY TIME.  I DON'T EVEN --

7  THIS IS NOT EVEN THE PROPER JURISDICTION.  I MEAN, THIS

8  IS EL CAJON.  WHY ISN'T THIS DOWNTOWN?  I MEAN, AT LEAST

9  ALLEGED IT WAS -- FROM WHERE HE STATED THAT THEY THINK,

10 WHICH IS A WIDE RANGE, THAT IS SAN DIEGO.

11         THE COURT:  WELL, THIS IS THE COUNTY OF SAN

12 DIEGO.  WE ARE ALL MEMBERS OF THE SAN DIEGO COUNTY

13 SUPERIOR COURT.  AND THE TESTIMONY WAS THAT IT OCCURRED

14 ON 125 UP NEAR THE INTERSTATE 8, AND THAT IS IN LA

15 MESA/SPRING VALLEY AREA.  AND THAT IS WITHIN THE VENUE

16 LINES FOR THIS COURT.

17         MR. CHRISTOPHER:  I SUBMIT.

18         THE COURT:  MS. GRASSO?

19         MS. GRASSO:  IN RESPONSE TO COUNT 1, THE

20 OFFICER DID TESTIFY THAT THEY WERE COHABITATING.  YOU

21 DON'T NEED TO BE SPOUSES FOR THIS CHARGE TO APPLY.  AND

22 JUST THE FACT THAT THEY BOTH WENT TO SLEEP TOGETHER,

23 THEY WERE LIVING IN THE SAME APARTMENT, AND, IN FACT,

24 THAT IS WHAT MS. BROWN'S TESTIMONY WAS.

25         AS FAR AS NOT BEING ABLE TO LEAVE, I BELIEVE

26 THAT THE FOLLOWING DAY ON THE 5TH WHEN MS. BROWN WAS DUE

27 TO GO TO WORK, THERE WAS TESTIMONY THAT MR. CHRISTOPHER

28 WOULD NOT LET HER GO TO WORK.  SHE -- THERE IS NO PHONE

1    IN THE HOUSE, SO SHE BELIEVED.

2        THE COURT:  WELL, THE TESTIMONY IS "YOU ARE

3    NOT GOING TO WORK, YOU STUPID BITCH."  THAT IS A QUOTE.

4        MR. CHRISTOPHER:  IT IS NOT A QUOTE.

5        THE COURT:  NO, NO, NO.  THAT IS WHAT WAS

6    SAID.  HOW IS THAT A FALSE IMPRISONMENT?

7        MS. GRASSO:  WELL, SHE BELIEVED THAT SHE WAS

8    NOT ABLE TO LEAVE THE PLACE.

9        THE COURT:  BASED ON WHAT?

10       MS. GRASSO:  ON HIS STATEMENT, ON HIS THREATS,

11   AND ON HIS STATEMENT THAT BASICALLY SHE WAS DUE TO GO TO

12   WORK, SHE COULD NOT GO TO WORK.  SHE WAITED UNTIL HE

13   FELL ASLEEP UNTIL SHE LEFT THE HOUSE.  BASICALLY, HER

14   ACTIONS SHOWED THAT SHE BELIEVED SHE WAS NOT ABLE TO

15   LEAVE THE HOUSE.

16       AND SO, BASED ON HER BELIEF, BASED ON THE

17   THREATS THAT SHE SAID THAT SHE TOOK SERIOUSLY, AND BASED

18   ON THE FACT THAT SHE WAS DUE TO LEAVE AND HE WOULD NOT

19   ALLOW HER TO GO TO WORK, ALSO THE FACT THAT HE HAD HER

20   CAR KEYS IN HIS POCKET AND SHE COULDN'T LEAVE.

21       THE COURT:  SHE DIDN'T EVEN TRY TO LEAVE.

22       MS. GRASSO:  SHE FELT SHE COULD NOT.

23       MR. CHRISTOPHER:  THOSE ARE --

24       THE COURT:  NO, NO, YOU HAD YOUR ARGUMENT,

25   MR. CHRISTOPHER.

26       MR. CHRISTOPHER:  I APOLOGIZE.

27       THE COURT:  IS THAT IT?

28       MS. GRASSO:  YES, YOUR HONOR.

1       THE COURT:  YES, ON COUNT 3, WHAT WE HAVE IS,

2   BASED UPON THE TESTIMONY THAT HAS BEEN PRESENTED HERE,

3   WHAT WE HAVE IS THE STATEMENT "YOU ARE NOT GOING TO

4   WORK, YOU STUPID BITCH," STANDING ALONE.  WE HAVE THE

5   CIRCUMSTANCE THAT THERE IS NO PHONE IN THE ROOM, BUT

6   THAT IS NOT -- THAT IS NOT INHERENT IN ANY FALSE

7   IMPRISONMENT, NOT A TERRIBLY MEANINGFUL THING.

8       THE FACT THAT MR. CHRISTOPHER MAY HAVE CAR

9   KEYS IN HIS POCKET, YOU KNOW, THAT SAYS VERY LITTLE.  I

10  MEAN, THAT DOESN'T MEAN SHE CAN'T GO OUT OF THE ROOM,

11  SHE CAN'T LEAVE THE ROOM AND WALK DOWN THE BLOCK.  THE

12  FACT THAT HE SAYS YOU ARE NOT GOING TO WORK DOESN'T MEAN

13  THAT HE IS PREVENTING HER FROM GOING OUT IN THE PARKING

14  LOT, GOING DOWN TO THE STARBUCKS, GOING ANYWHERE THAT

15  SHE WANTS TO GO.

16      AND THERE IS NOTHING THAT, AT LEAST THAT WAS

17  TESTIFIED TO AT THIS HEARING, THAT WAS CONTEMPORANEOUS

18  WITH THE STATEMENT THAT YOU ARE NOT GOING TO WORK THAT

19  CONSTITUTES A THREAT.  IF YOU, YOU KNOW, "YOU ARE NOT

20  GOING TO WORK, YOU STUPID BITCH, AND IF YOU TRY TO LEAVE

21  HERE I AM GOING TO KILL YOU."  OR I AM GOING TO BEAT YOU

22  OR I AM GOING TO DO SOMETHING ELSE.  NONE OF THAT IS

23  TOGETHER.  SO I THINK THAT IS MISSING ON COUNT 3.  AND I

24  AM DISCHARGING THE DEFENDANT ON COUNT 3, THE FALSE

25  IMPRISONMENT.

26      AS TO THE COUNT 1, MR. CHRISTOPHER, YOU

27  CHARACTERIZED THE OFFENSE IN THE SHORTHAND, SPOUSAL

28  ABUSE.  THE CODE DOESN'T REQUIRE THAT YOU BE SPOUSES.

1   WHAT 273.5 OF THE PENAL CODE SAYS IS ANY PERSON WHO

2   WILLFULLY INFLICTS UPON A PERSON, WHO IS HIS OR HER

3   SPOUSE, FORMER SPOUSE, COHABITANT, FORMER COHABITANT OR

4   MOTHER OR FATHER OF HIS OR HER CHILD.  SO THOSE ARE THE

5   CATEGORIES OF INDIVIDUALS THAT FALL WITHIN THE SPOUSAL

6   ABUSE STATUTE.  THAT IS JUST A SHORTHAND WAY OF

7   MISIDENTIFYING THE OFFENSE.

8           THE OFFENSE IS INFLICTING CORPORAL INJURY ON A

9   CURRENT OR FORMER SPOUSE OR COHABITANT, AND YOU WERE IN

10  THE SAME APARTMENT WITH MS. BROWN ON THIS DATE, AND THAT

11  MAKES YOU A COHABITANT.  AND SO IT IS APPLICABLE TO YOU.

12          YOUR ARGUMENT THAT I THINK YOU WANT TO MAKE,

13  YOU WERE MAKING THE POINT, I THINK, WITH THE QUESTIONING

14  OF THE OFFICER, IS TALKING ABOUT THE EXTENT OF INJURY.

15  THIS PARTICULAR OFFENSE DOES NOT REQUIRE SERIOUS INJURY.

16  IT REQUIRES A CORPORAL INJURY RESULTING IN A TRAUMATIC

17  CONDITION.  CORPORAL INJURY BASICALLY MEANS FORCE BEING

18  APPLIED THAT RESULTS IN SOME KIND OF A TRAUMA.  THERE IS

19  A PHOTO OF MS. BROWN HERE WITH A BLACK EYE; THAT IS A

20  CORPORAL INJURY.  THE BLACK EYE IS A TRAUMATIC

21  CONDITION, AND THAT FITS WITHIN 273.5, AND THERE IS

22  SUFFICIENT CAUSE TO BELIEVE THAT OFFENSE HAS OCCURRED,

23  AND SUFFICIENT CAUSE TO HOLD YOU TO ANSWER TO THAT.

24          AS FAR AS COUNT 2 GOES, "I AM GOING TO KILL

25  YOU, BITCH," THE TESTIMONY I THINK IS -- WELL, THAT IS A

26  PRETTY CLEAR STATEMENT.  IT'S A LITTLE WEAK ON A 115

27  KIND OF BASIS WITHOUT THE VICTIM ACTUALLY TELLING US HOW

28  SHE REACTED TO THAT STATEMENT, BUT I THINK IT IS THERE

41

1  FOR PURPOSES OF A PRELIMINARY HEARING.  BUT IT IS NOT

2  SOMETHING, WITHOUT MORE, THAT IS GOING TO GET BY AN

3  1118.1, LET ALONE BY A JURY VERDICT.  BUT FOR PURPOSES

4  OF THE PRELIMINARY HEARING, I WILL FIND THAT THERE IS

5  SUFFICIENT CAUSE TO BELIEVE THAT OFFENSE HAS OCCURRED AS

6  WELL.

7          SO THE DEFENDANT IS GOING TO BE BOUND OVER ON

8  COUNT 1 AND COUNT 2, DISCHARGED ON COUNT 3.

9          THE ENHANCEMENT ON COUNT 1, PRIOR 273.5, THERE

10 IS A PRIOR 273.5 FROM THE DOWNTOWN CASE, M909832, AND

11 THE DEFENDANT WILL BE HELD TO ANSWER.

12         AND THAT WILL BE ON THE 19TH OF APRIL AT 1:25

13 IN DEPARTMENT 11.

14         AM I RIGHT, MR. CHRISTOPHER, YOUR PAROLE HAS

15 BEEN REVOKED, SO YOU ARE BACK WITH THE DEPARTMENT OF

16 CORRECTIONS; IS THAT CORRECT?

17         MR. CHRISTOPHER:  I SHOULD BE COMPLETED MAY

18 THE 1ST OF THIS YEAR, IN ABOUT THREE WEEKS.

19         THE COURT:  BUT THERE IS NO POINT IN SETTING

20 BAIL FOR YOU NOW BECAUSE YOU ARE NOT GOING TO BE GETTING

21 ANY CREDIT BECAUSE YOU ARE A SENTENCED PRISONER, AND YOU

22 CAN'T MAKE BAIL.  EVEN IF YOU WERE TO MAKE BAIL, YOU

23 CAN'T DO IT.  YOU ARE GOING TO BE IN FRONT OF THE NEXT

24 JUDGE ON THE 19TH OF APRIL BEFORE YOUR TIME IS UP, SO

25 YOU CAN MAKE WHATEVER PITCHES YOU NEED TO MAKE THEN.

26         DO YOU WANT AN ATTORNEY?

27         MR. CHRISTOPHER:  NOT AT THIS POINT.  WHAT

28 DATE DO WE HAVE -- HAVE YOU SET FOR THE MOTION HEARING?

1      THE COURT:  WELL, THAT IS GOING BE SET ON THE

2  19TH OF APRIL.  IF WE DID AN IMMEDIATE ARRAIGNMENT OF

3  YOU NOW, THEN THE MOTION CUT OFF DATE WOULD BE APRIL

4  19TH, BUT IT WILL PROBABLY BE TWO WEEKS AFTER THE

5  ARRAIGNMENT IN DEPARTMENT 11.

6      MR. CHRISTOPHER:  I WOULD RATHER DO THE

7  ARRAIGNMENT NOW.  I DON'T WANT ANY DELAYS.

8      THE COURT:  ALL RIGHT.  DO YOU HAVE ANY

9  PROBLEM WITH DOING AN IMMEDIATE ARRAIGNMENT?

10      MS. GRASSO:  NO, YOUR HONOR.

11      THE COURT:  YOU NEED TO UNDERSTAND ALSO, MR.

12  CHRISTOPHER, WE ARE GOING TO ARRAIGN YOU ON THE --

13  BASICALLY TURN THE COMPLAINT INTO AN INFORMATION AT THIS

14  TIME, AND I AM GOING TO BLACK OUT COUNT 3 ON MY COPY;

15  THAT IS GOING TO BE IN THE COURT FILE.  BUT THE DISTRICT

16  ATTORNEY CAN REFILE THOSE CHARGES IF THEY WISH AND SEEK

17  TO HAVE A COURT UP THE LINE REINSTATE THE CHARGE ON THE

18  FALSE IMPRISONMENT IF THEY THINK THEY HAVE GOT EVIDENCE

19  FOR IT.

20      BUT AFTER YOU CONFORM THIS, MS. GRASSO, I WANT

21  YOU TO SHOW IT TO MR. CHRISTOPHER.

22      MR. CHRISTOPHER, YOU NEED TO MAKE THE

23  MODIFICATIONS ON YOUR COPY OF THE COMPLAINT.  WHAT SHE'S

24  DOING RIGHT NOW IS SHE IS GOING TO PUT AN S IN FRONT OF

25  THE NUMBER, SO IT'S AN SCE NUMBER NOW.  AND AS I

26  MENTIONED, I BLACKED OUT NUMBER 3 ON THE CHARGING FACE

27  SHEET.  AND I BLACKED OUT -- CROSSED OUT COUNT 3 IN THE

28  THING ITSELF.  I AM GOING TO DATE IT WHERE THERE IS A

1  BOX THAT SAYS INFORMATION, AND SHE IS SIGNING IT.

2           ALL RIGHT.  SO AN ARRAIGNMENT PROCESS;

3  NORMALLY WE HAVE -- THE DEFENSE ATTORNEYS WOULD BE DOING

4  THE ARRAIGNMENT FOR YOU.  I GUESS I AM GOING TO DO IT

5  MYSELF.  YOU HAVE RECEIVED NOW A COPY OF THE COMPLAINT

6  THAT HAS BEEN DEEMED TO BE AN INFORMATION?

7           MR. CHRISTOPHER:  YES.

8           THE COURT:  YOU MADE YOUR CHANGES; IS THAT

9  CORRECT?

10           MR. CHRISTOPHER:  YES, SIR.

11           THE COURT:  AND YOUR TRUE NAME APPEARS ON THE

12  COMPLAINT, ON THE INFORMATION?

13           MR. CHRISTOPHER:  AT THE TOP, YES.

14           THE COURT:  AT THE TOP.  AND THE DATE OF BIRTH

15  IS CORRECT?

16           MR. CHRISTOPHER:  YES.

17           THE COURT:  YOU HAVE BEEN PREVIOUSLY ADVISED

18  OF YOUR CONSTITUTIONAL RIGHTS; IS THAT ALSO, CORRECT?

19           MR. CHRISTOPHER:  YES.

20           THE COURT:  YOU UNDERSTAND THOSE RIGHTS?

21           MR. CHRISTOPHER:  YES.

22           THE COURT:  DO YOU WAIVE A FORMAL READING OF

23  THE INFORMATION?

24           MR. CHRISTOPHER:  YES.

25           THE COURT:  AND YOU WISH TO ENTER A PLEA OF

26  WHAT?

27           MR. CHRISTOPHER:  NOT GUILTY.

28           THE COURT:  AND YOU ARE DENYING THE ALLEGATION

44

1   THAT IS ATTACHED TO COUNT 1?

2          MR. CHRISTOPHER:  YES.

3          THE COURT:  AND YOU ARE NOT REQUESTING COURT

4   APPOINTED COUNSEL AT THIS TIME; YOU ARE CONTINUING YOUR

5   PRO PER STATUS?

6          MR. CHRISTOPHER:  YES.

7          THE COURT:  YOU UNDERSTAND THAT I WILL APPOINT

8   YOU COUNSEL NOW IF THAT IS YOUR DESIRE?

9          MR. CHRISTOPHER:  I WOULD ACCEPT COUNSEL IF I

10  CAN BE CO-COUNSEL.

11         THE COURT:  I AM NOT GOING TO DO THAT.

12         MR. CHRISTOPHER:  EXACTLY.  THEN I WILL REMAIN

13  PRO PER.

14         THE COURT:  NOW, DATES ARE GOING TO BE AS

15  FOLLOWS:  I THINK YOU ARE CURRENTLY IN A NO BAIL STATUS.

16  NO, YOU ARE IN BAIL STATUS, $200,000 BAIL; THAT IS GOING

17  TO REMAIN.

18         MOTION CUT OFF DATE IS APRIL 19TH; READINESS

19  DATE WILL BE MAY 8TH, THAT IS AT 9:30 IN DEPARTMENT 11;

20  TRIAL CALL WILL BE MAY 21ST AT 9:00 IN DEPARTMENT 11.

21         YOU ARE ORDERED TO APPEAR ON THE 8TH OF MAY

22  AND ON THE 21ST OF MAY IN DEPARTMENT 11.  THE TRIAL CALL

23  IS AT 9:00 A.M, AND THAT WILL LEAVE ABOUT TWO WEEKS TO

24  GET YOU OUT TO TRIAL.

25         MR. CHRISTOPHER:  TRIAL CALL, THE DATE IS MAY

26  THE WHAT NOW?

27         THE COURT:  21ST.

28         MR. CHRISTOPHER:  MAY 21ST.  OKAY.  APRIL THE

1   19TH?

2           THE COURT:   THAT IS WHEN YOU HAVE TO HAVE YOUR

3   WRITTEN MOTIONS FILED WITH THE COURT.

4           MR. CHRISTOPHER:   OKAY.   YOU DIDN'T SAY I WAS

5   ORDERED TO APPEAR ON THAT DATE.

6           THE COURT:   NO, THAT IS BECAUSE THE FILING OF

7   THOSE MOTIONS DOESN'T REQUIRE AN APPEARANCE.

8           MR. CHRISTOPHER:   OKAY.

9           THE COURT:   BUT YOU WILL NEED TO MAKE

10  ARRANGEMENTS WITH YOUR INVESTIGATOR OR YOUR RUNNER TO

11  MAKE SURE THAT --

12          MR. CHRISTOPHER:   OKAY.   THE MOTION WILL BE

13  HEARD MAY THE 8TH?

14          THE COURT:   I DON'T KNOW WHEN THE MOTION WILL

15  ACTUALLY BE HEARD.

16          MR. CHRISTOPHER:   YOU SAID THAT YOU WOULD SET

17  A MOTION HEARING DATE.

18          THE COURT:   THEY WILL SET THE DATE FOR THE

19  MOTION AFTER THE MOTION HAS BEEN FILED.   WE'RE NOT GOING

20  TO SET DATES ON MOTIONS THAT HAVEN'T BEEN FILED.

21          MR. CHRISTOPHER:   OKAY.   YOU HAVE ONE NOW.

22          THE COURT:   RIGHT, BUT THAT HASN'T BEEN SERVED

23  ON ANYONE ELSE; IT HASN'T BEEN PERFECTED.   YOU ARE NOT

24  REQUIRED TO WAIT UNTIL THE 19TH OF APRIL TO FILE YOUR

25  MOTIONS.

26          MR. CHRISTOPHER:   CORRECT.

27          THE COURT:   THAT IS THE LAST DAY YOU WILL BE

28  ABLE TO GET A MOTION FILED AND HEARD BEFORE YOUR TRIAL.

1    MR. CHRISTOPHER: OKAY. THE ONE THAT I GAVE

2   YOU, I WANT IT FILED TODAY, BUT I WANT A COPY BACK; THAT

3   IS ALL.

4    THE COURT: WE ARE GOING TO GIVE YOU A COPY

5   BACK. BUT, I MEAN, AND LIKE I SAID, WE ARE GOING TO

6   GIVE YOU A COPY BACK. AS FAR AS A DATE GOES, I AM NOT

7   GOING TO BE GIVING THE DATE FOR THAT.

8    MR. CHRISTOPHER: OKAY, I UNDERSTAND.

9    THE COURT: OKAY.

10    MR. CHRISTOPHER: I CAN'T GIVE A COPY TO THE

11   SHERIFF AND SHE SERVE THE DISTRICT ATTORNEY WHILE SHE'S

12   HERE?

13    THE COURT: WILL YOU ACCEPT SERVICE ON THE

14   MOTION?

15    MS. GRASSO: YOUR HONOR, I WOULD RATHER NOT,

16   BECAUSE THIS IS MS. DEMAUREGNE'S CASE; SHE'S IN TRAINING

17   ALL WEEK. I WOULD LIKE IT TO GO THROUGH PROPER CHANNELS

18   SO SHE CAN GET IT. IF YOUR HONOR FEELS IT IS BEST UNDER

19   THESE CONDITIONS, I WILL ACCEPT IT AND PASS IT ON TO

20   HER.

21    MR. CHRISTOPHER: BECAUSE IT'S EXTREMELY

22   DIFFICULT AS A PRO PER. I MEAN, AS YOU SEE, LIKE I

23   HAVEN'T EVEN RECEIVED A RUNNER YET. SO I WOULD LIKE TO

24   DO IT, AT LEAST GET THAT DONE.

25    THE COURT: ALL RIGHT. WE WILL MAKE COPIES.

26    THE CLERK: AT THE TIME THEY FILE THE MOTION

27   DOWNSTAIRS, THEY GET THE DATE; THEY GET THE DATE FOR

28   DEPARTMENT 11.

1        THE COURT:  LET'S GET THE DATE FOR THAT.  ARE

2  YOU GOING TO BE FILING ANY OTHER MOTIONS?

3        MR. CHRISTOPHER:  I HOPE SO.

4        THE COURT:  I THINK THEY ARE GOING TO WANT TO

5  TRY TO DO EVERYTHING AT ONCE.

6        MR. CHRISTOPHER:  WE WILL DO IT ALL THE SAME

7  DATE.  IF THEY GIVE ME THE DATE, I WILL MAKE SURE

8  EVERYTHING IS DONE, AND I WILL HAVE TO GET THEM SERVED

9  THE BEST WAY I CAN ON THE OTHER MOTIONS; THAT ONE I WANT

10  SERVED.

11        THE COURT:  APRIL 20TH AT 9:30 IN DEPARTMENT

12  11 WILL BE THE MOTION DATE.

13        MR. CHRISTOPHER:  JUDGE EXHAROS.

14        THE COURT:  THAT IS RIGHT.  ALL RIGHT.  WE ARE

15  DONE.  WE WILL GET YOU COPY OF THE MOTION AND SERVE THE

16  DA WITH THEIR COPY.

17        MR. CHRISTOPHER:  THANK YOU.

18

19        **(WHEREUPON THE PROCEEDINGS**

20        **CONCLUDED AT 12:05 P.M.)**

21

22

23

24

25

26

27

28

48

1    STATE OF CALIFORNIA )
                                SS.
2    COUNTY OF SAN DIEGO )

3

4

5            I, THOMAS R. MCPHAIL, CSR NO. 12544, AN

6    OFFICIAL REPORTER OF THE SUPERIOR COURT OF THE STATE OF

7    CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO, DO

8    HEREBY CERTIFY THAT AS SUCH REPORTER, I REPORTED IN

9    SHORTHAND THE TESTIMONY ADDUCED AND THE PROCEEDINGS HAD

10   AT THE HEARING OF THE ABOVE ENTITLED CAUSE, AND THAT THE

11   FOREGOING TRANSCRIPT, CONSISTING OF PAGES NUMBERED ____

12   THROUGH _____, INCLUSIVE, IS A FULL, TRUE AND CORRECT

13   RECORD OF THE TESTIMONY AND EVIDENCE ADDUCED AND

14   PROCEEDINGS HAD AT THE HEARING OF SAID CAUSE.

15

16

17          DATED THIS _16__ DAY OF _April_, _2007_ AT

18   SAN DIEGO, CALIFORNIA.

19

20

21                        THOMAS MCPHAIL
                          CSR NO. 12544
22                        OFFICIAL REPORTER

23

24

25

26

27

28

**EXHIBIT E**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

EAST COUNTY DIVISION

DEPARTMENT 11          HON. HERBERT J. EXARHOS, JUDGE

```
-----------------------------)
THE PEOPLE OF THE STATE OF    )
CALIFORNIA,                   )
                             )
          PLAINTIFF,          )
                             )
VS.                           )   CASE NO. SCE269321
                             )
CARRE CHRISTOPHER, JR.,       )
                             )
          DEFENDANT.          )
-----------------------------)
```

REPORTER'S TRANSCRIPT
OF PROCEEDINGS

APRIL 20, 2007

PAGES 1 THROUGH 14

APPEARANCES:

FOR THE PLAINTIFF:       CLAUDIA GRASSO,
                         DEPUTY DISTRICT ATTORNEY

FOR THE DEFENDANT:       CARRE CHRISTOPHER, JR.,
                         IN PROPRIA PERSONA

COPY

TERESA D. MENDOZA
CSR NO. 12947
OFFICIAL COURT REPORTER
EL CAJON, CALIFORNIA

87

1

1    EL CAJON, CALIFORNIA, FRIDAY, APRIL 20, 2007

2

3        THE COURT:  PEOPLE VERSUS CHRISTOPHER CARRE.

4        MS. GRASSO:  CARRE IS THE FIRST NAME,

5    CHRISTOPHER IS THE LAST NAME.

6        THE COURT:  ALL RIGHT.

7        MS. GRASSO:  CLAUDIA GRASSO FOR THE PEOPLE, YOUR

8    HONOR.

9        THE COURT:  GOOD AFTERNOON, MR. CARRE --

10   MR. CHRISTOPHER, I'M SORRY.

11       MR. CHRISTOPHER:  YES, GOOD AFTERNOON TO YOU.

12       THE COURT:  NOW, YOU HAVE A COUPLE OF MOTIONS

13   THAT ARE SET FOR HEARING, WITH THE TRIAL DATE COMING

14   UP OF MAY 21.

15          THE FIRST MOTION IS YOUR 1381, WHICH IS

16   BASED ON YOUR WRITTEN MOTION, WHICH I HAVE READ AND

17   CONSIDERED.  NOW, BY 1381 THAT MEANS RECENTLY YOU

18   WERE IN PRISON; IS THAT CORRECT?

19       MR. CHRISTOPHER:  YES.

20       THE COURT:  ON ANOTHER CASE?

21       MR. CHRISTOPHER:  YES.

22       THE COURT:  OKAY.

23          AND THEN THIS CASE, OR THESE CHARGES HAD

24   OCCURRED, BUT THEY HAD NOT YET BEEN FILED; IS THAT A

25   FAIR STATEMENT?

26       MR. CHRISTOPHER:  NOT EXACTLY, YOUR HONOR.  I

27   WAS ARRESTED ON THESE CHARGES.

28       THE COURT:  RIGHT.

2

MR. CHRISTOPHER:  BUT THEY WERE STILL PENDING.

THE COURT:  THEY HAD NOT FILED A COMPLAINT OR AN INFORMATION?

MR. CHRISTOPHER:  RIGHT.

THE COURT:  OKAY.

SO 1381 IS BASICALLY THE VEHICLE WHEREIN A PRISONER SAYS, "HEY, I'M IN PRISON.  I'VE GOT THIS OTHER CASE, I WANT IT HANDLED."

RIGHT?

MR. CHRISTOPHER:  RIGHT.

THE COURT:  BUT IF THERE'S NO OTHER CASE AND 1381 DOESN'T SERVE TO SAY, "USE IT OR LOSE IT, FILE IT, GET OFF THE DIME AND DO SOMETHING."  THAT'S NOT WHAT 1381 DOES.  IT JUST EXTRADITES SOMETHING THAT ALREADY EXISTS.  IT DIDN'T EXIST, SO YOU CAN'T FORCE IT TO EXIST.  I UNDERSTAND YOUR PROBLEM BECAUSE YOU WANT TO GET IT GOING, BUT -- WHAT WERE YOU IN PRISON FOR?

MR. CHRISTOPHER:  I HAD A PAROLE VIOLATION ABOUT THIS CASE.

THE COURT:  NOT ON THIS CASE?

MR. CHRISTOPHER:  YEAH, DUE TO THIS CASE.

THE COURT:  THIS WAS THE BASIS FOR THE PAROLE VIOLATION?

MR. CHRISTOPHER:  YES.

THE COURT:  OKAY.

BUT THEY HADN'T FILED THIS CASE YET, BUT THE PAROLE BOARD TOOK IT INTO CONSIDERATION AND

1   ROLLED YOU UP, FOR HOW LONG?

2       MR. CHRISTOPHER:  FOR 10 MONTHS.

3       THE COURT:  SO YOU'RE STILL DOING THAT?

4       MR. CHRISTOPHER:  YES.

5       THE COURT:  OKAY.

6           SO THERE'S NO MERIT TO YOUR 1381, IF THAT'S

7   THE FACTUAL SITUATION.  IS THAT THE FACTUAL

8   SITUATION?

9       MR. CHRISTOPHER:  THE FACTUAL SITUATION, SIR, IS

10  THAT I WAS ARRESTED ON THESE CHARGES --

11      THE COURT:  RIGHT.

12      MR. CHRISTOPHER:  -- AND BOOKED.  I SUBMITTED

13  THE SHERIFF'S DEPARTMENT'S BOOKING RECORDS.  I WAS

14  BOOKED AND ARRESTED ON THESE CHARGES.  IN FACT, THE

15  CASE SAYS "WHEN YOU ARE ARRESTED, THE CHARGES ARE

16  PENDING."  I WAS ARRESTED -- ON PEOPLE VERSUS CAVE

17  CASE SAYS WHEN YOU ARE ARRESTED -- I WAS ARRESTED ON

18  THESE CHARGE, I SUBMITTED A BOOKING SHEET TO THE

19  COURT IN MY --

20      THE COURT:  OKAY.

21      MR. CHRISTOPHER:  NOT ONLY THAT, LIKE, THE

22  WITNESSES -- MY SPEEDY TRIAL RIGHTS HAVE BEEN

23  DENIED.  I HAVE BEEN SERIOUSLY PREJUDICED DUE TO THE

24  FACT THAT THE DA HAS TAKEN SO LONG TO CHARGE THIS

25  CASE.

26      THE COURT:  ANYTHING FURTHER ON THAT ISSUE?

27      MR. CHRISTOPHER:  YEAH.  I MEAN, EVEN THE DA, IN

28  THE PRELIMINARY HEARING, IT SEEMED LIKE THE DISTRICT

4

1  ATTORNEY'S WITNESSES HAVE EVEN FORGOTTEN THINGS THAT

2  OCCURRED ON THAT DAY.  THE OFFICER TESTIFIED 10

3  TIMES DURING THE PRELIMINARY HEARING ON PAGES 18,

4  24, 14 -- 24, 25, 26, 27, 23, 28, AND ON PAGE 31,

5  THE OFFICER TESTIFIED THAT HE CANNOT RECOLLECT WHAT

6  HAD HAPPENED IN THIS CASE.  NOT ONLY THAT, I HAVE

7  LOST CONTACT WITH WITNESSES.  THE FACT THAT IT HAS

8  TAKEN SO LONG FOR THEM TO PRESS CHARGES ON THIS CASE

9  IRREPARABLY PREJUDICES ME.  NOT ONLY THAT, WHY DID

10  IT TAKE THEM SO LONG TO PRESS CHARGES -- ACTUALLY

11  FILE THE CHARGES, THE CHARGES WERE ALWAYS PENDING.

12  WHY DID IT TAKE THEM SO LONG?  I MEAN, THE

13  INVESTIGATION WAS OVER WITH IN DECEMBER.  I'VE GOT A

14  POLICE REPORT AND AN INVESTIGATOR'S REPORT, BOTH OF

15  THEM WERE OVER IN DECEMBER OF LAST YEAR.  I MEAN,

16  LIKE, WHY DID IT TAKE SO LONG?  I MEAN, HOW CAN I

17  PRESENT A TRIAL WHEN THE WITNESSES ARE GONE.

18      THE COURT:  ANYTHING ELSE ON THAT ISSUE, SIR?

19      MR. CHRISTOPHER:  NO.

20      THE COURT:  OKAY.

21          FIRST OF ALL, WE'RE TALK ABOUT DECEMBER,

22  2006.

23      MR. CHRISTOPHER:  YES.

24      THE COURT:  NO.  YOU JUST SIT AND LISTEN TO ME

25  NOW.  I DON'T INTERRUPT YOU WHEN YOU TALK.  YOU

26  DON'T INTERRUPT ME EVEN SO MUCH AS WITH A "YES" OR

27  "NO."  YOU MADE YOUR ARGUMENT.  I HAVE HEARD YOU

28  OUT.  I'M NOW GOING TO MAKE MY RULING TO TELL YOU

5

WHAT THE DECISION IS.

THIS HAPPENED IN DECEMBER, 2006, THIS IS ALL OF APRIL, 2007.  THIS IS NOT AN INORDINATELY LONG PERIOD OF TIME.  IN FACT, THE COMPLAINT WAS FILED, APPARENTLY, BACK IN MARCH.  SO A LONG PERIOD OF TIME HAS NOT GONE BY.  THEY HAVE -- ALTHOUGH THE STATUTE OF LIMITATIONS HAS NOT RUN, THEY STILL HAVE AN OBLIGATION TO PROCEED IN A REASONABLY PRUDENT MANNER WITHIN THAT PERIOD OF THE STATUTE OF LIMITATIONS, BUT THERE IS NOTHING ABOUT THIS PERIOD OF TIME WHICH VIOLATED THAT.  THE FACT THAT YOU WERE INCARCERATED FOR THAT PAROLE VIOLATION MATTERS NOT. THE 1381 AND THE CASE IS SPECIFIC AND I WILL SITE IT TO YOU PEOPLE VERSUS ELDRIDGE, 52 CAL.APP.4TH 91; SECTION 1381.

MR. CHRISTOPHER:  YOUR HONOR --

THE COURT:  DON'T INTERRUPT ME.  THAT'S ONE WAY TO LOSE YOUR PRO PER STATUS.

MR. CHRISTOPHER:  I NEED A PENCIL TO WRITE DOWN THE CASE.

THE COURT:  ALL RIGHT.

GIVE HIM A PENCIL.  WHY DON'T YOU HAVE A PENCIL?  HOW CAN YOU REPRESENT YOURSELF --

BAILIFF:  THEY ARE NOT ALLOWED TO HAVE ONE.  I CAN GIVE HIM ONE WHEN HE COMES IN HERE.

MR. CHRISTOPHER:  CAN THEY -- AT LEAST, CAN THEY CHAIN ME HERE SO THAT I CAN WRITE IT DOWN?

THE COURT:  YES.

6

1    BAILIFF:  NOT A PROBLEM.

2    MR. CHRISTOPHER:  YOU SAID THE ELDRIDGE CASE?

3    THE COURT:  ELDRIDGE, 52 CAL.APP.4TH 91, PAGE

4    91.  I'M NOT GOING TO READ IT SLOW SO THAT YOU CAN

5    WRITE IT DOWN.  I MIGHT ORDER YOU A COPY OF THE

6    TRANSCRIPT.  IT STATES THAT "SECTION 1381 ASSUMES

7    THAT AN ACCUSATORY PLEADING IS ON FILE," THERE WAS

8    NOTHING ON FILE HERE TO RESPOND TO YOUR 1381.  YOUR

9    MOTION AS TO THAT ISSUE IS DENIED.  AS A PRACTICAL

10   MATTER, IT'S MOVING ALONG AT A REASONABLE PACE.

11        YOUR NEXT MOTION HAS TO DO WITH YOUR PRO

12   PER PRIVILEGES.  THE SHERIFF, YOU STATE, DOES NOT

13   HAVE THE REQUIRED BOOKS, THE EVIDENCE CODE, OR A

14   CRIMINAL PROCEDURE.  ARE YOU SAYING THAT THEY DON'T

15   PROVIDE YOU WITH AN EVIDENCE CODE?

16   MR. CHRISTOPHER:  YES.  THAT'S WHAT I AM SAYING.

17   I MEAN, BARE MINIMUM TO PREPARE A DEFENSE.  NOT ONLY

18   THAT, THE CRIMINAL PRACTICE -- WHEN I ASKED THEM

19   ABOUT IT THEY SAID, "WELL, SOMEONE STOLE THE BOOK A

20   COUPLE YEARS AGO."  I'M LIKE, "A COUPLE YEARS AGO?"

21   YOU KNOW, I SHOULD HAVE ACCESS TO A PEN.  I SHOULD

22   HAVE ACCESS -- I SHOULD BE ABLE TO CALL TO PURSUE

23   WITNESSES.  I MEAN, MY PRO PER -- IT'S BEING DENIED,

24   REALLY.  THE PRIVILEGE OF BEING A PRO PER IS

25   DELIBERATELY BEING DENIED.  I AM NOT THE ONLY ONE

26   WITH THIS COMPLAINT.  EVERY PRO PER THERE HAS THE

27   SAME COMPLAINT, YOUR HONOR.  IT IS UP TO THE COURT.

28   WE ARE LETTING THE COURT KNOW WHAT IS HAPPENING.

1  THE COURT CAN DO SOMETHING ABOUT IT.  THE TELEPHONE,
2  WE CAN'T CONTACT PCC.  WE'RE SUPPOSED TO BE ABLE TO
3  CALL PCC COLLECT, TO GET IN TOUCH WITH OUR
4  INVESTIGATORS AND OUR RUNNERS.  THE TELEPHONE HAS
5  BEEN BROKEN TWO MONTHS, AS OF TODAY.
6      THE COURT:  DO YOU HAVE AN INVESTIGATOR AND A
7  RUNNER?
8      MR. CHRISTOPHER:  YEAH.  I AM SUPPOSED TO HAVE A
9  RUNNER.  THE RUNNER HAS NOT CAME TO VISIT ME YET.
10  THE RUNNER IS SUPPOSED TO COME AND VISIT YOU.  I
11  SHOULD BE ABLE TO TELL THE RUNNER -- IF I CANNOT
12  MAKE A PHONE CALL, THE RUNNER SHOULD BE ABLE TO GO
13  AND TAKE CARE OF A PHONE CALL.  I HAVE POTENTIAL
14  WITNESSES THAT I NEED SUBPOENAED.  I HAVE AN
15  INVESTIGATOR THAT I SHOULD BE ABLE TO SAY, "GO AND
16  SUBPOENA THESE WITNESSES."  I SHOULD BE ABLE TO READ
17  AN EVIDENCE CODE BOOK.
18      THE COURT:  I AGREE WITH THAT.
19      MR. CHRISTOPHER:  I SHOULD BE ABLE TO READ A
20  PENAL CODE BOOK.
21      THE COURT:  CERTAINLY.  AND YOU'RE TELLING ME
22  THEY DON'T HAVE AN EVIDENCE CODE OR A PENAL CODE
23  BOOK?
24      MR. CHRISTOPHER:  THEY DON'T HAVE AN EVIDENCE
25  CODE BOOK IN THE LAW LIBRARY.  THAT'S INSANITY, YOUR
26  HONOR.
27      BAILIFF:  I'M GOING TO CALL THE PRO PER DEPUTY.
28      THE COURT:  OKAY.

8

1        THEN THEY CAN'T CALL IT A LIBRARY.

2        MR. CHRISTOPHER:  MR. LEE IS THE LAW LIBRARY,

3    THAT'S THE PERSON TO CALL.

4        THE COURT:  I'M GOING TO FIND OUT ABOUT THAT.

5    WE'RE GOING TO SORT THAT ONE OUT, MAYBE NOT TODAY.

6        MR. CHRISTOPHER:  YOU CAN CALL PCC THAT

7    THEIR PHONE IS BROKEN.  WE CANNOT CALL PCC COLLECT

8    FROM THE JAIL.

9        THE COURT:  I WILL SORT THAT ALL OUT.

10        MR. CHRISTOPHER:  WE SHOULD BE ABLE TO MAKE --

11        THE COURT:  I CAN'T ANSWER YOUR QUESTIONS RIGHT

12    NOW.  SO I WILL BUY SOME TIME.

13        MR. CHRISTOPHER:  OKAY.

14        YOUR HONOR, I JUST WANT TO ADDRESS ONE MORE

15    THING ABOUT THIS.

16        THE COURT:  OKAY.

17        MR. CHRISTOPHER:  WE SHOULD BE ABLE TO CALL

18    POTENTIAL WITNESSES.  WE SHOULD BE ABLE TO CALL --

19    I'M BEING ACCUSED OF AN INCIDENT ON A HIGHWAY.  I

20    SHOULD BE ABLE TO CALL AROUND AND FIND OUT

21    VERIFICATION THAT THERE WAS AN INCIDENT ON THE

22    HIGHWAY.  I SHOULD BE ABLE TO CALL CALIFORNIA

23    HIGHWAY DEPARTMENT.

24        THE COURT:  THEY CUT BACK ON PHONE PRIVILEGES

25    BECAUSE OF ALL THE ABUSES.  PEOPLE WERE ASKING FOR

26    PRO PER PRIVILEGES JUST SO THEY CAN GO TO THE

27    LIBRARY TO USE THE PHONE AND THE COMPUTER, SO THEY

28    CUT WAY BACK ON THAT.  YOU STILL HAVE ACCESS, EVEN

1  THOUGH IT MAY HAVE TO BE THROUGH YOUR INVESTIGATOR.

2      MR. CHRISTOPHER:  IF AN INDIVIDUAL IS PRO PER

3  AND THEY WANT TO WASTE THEIR TIME IN THE LIBRARY AND

4  GUARANTEE THE LOSS OF A BIG CASE, THAT'S ON THEM,

5  BUT THERE ARE PEOPLE LIKE ME THAT ARE FIGHTING FOR

6  THEIR LIFE.  I SHOULD HAVE IT.  YOU KNOW, BECAUSE

7  SOMEONE, YOU KNOW, MESSED UP ON THE PHONE, THAT

8  SHOULDN'T DEPRIVE ME OF IT.

9      THE COURT:  ALL RIGHT.

10          I'M DEFERRING THAT ISSUE, BECAUSE I HAVE TO

11  FIND OUT WHAT IT IS THEY HAVE AND WHAT THEY ARE

12  WILLING TO GIVE YOU.  WE'LL GET BACK TO THAT ONE.

13          THE NEXT ONE IS WHAT?  THE INFORMATION ON

14  BARBARA BROWN.

15      MR. CHRISTOPHER:  YES.  SHE HAS PSYCHOLOGICAL

16  EVALUATIONS FROM BOTH SOCIAL SECURITY DEPARTMENT AND

17  32ND STREET MEDICAL CENTER.  WE SHOULD HAVE THOSE

18  RECORDS.  SHE HAS A PROPENSITY TO CREATE DELUSIONS

19  OR WHATEVER.  I'M BEING CHARGED.  I SHOULD HAVE

20  THOSE RECORDS.  I SHOULD BE ABLE TO LET THE JURY

21  KNOW THIS.  THAT'S THE PROSECUTIONS KEY WITNESS,

22  SOMEONE THAT IS DELUSIONAL.

23      THE COURT:  THIS MOTION WAS JUST FILED --

24      MR. CHRISTOPHER:  I WAS INFORMED THEY WERE TO

25  FILE A MOTION BY THE 19TH OF THIS MONTH.

26      THE COURT:  THE PEOPLE HAVE AN OPPORTUNITY TO

27  RESPOND.  THE COURT NEEDS TO FAMILIARIZE ITSELF WITH

28  IT.  I NEED TO BUY TIME FROM YOU ON THAT BARBARA

10

1  BROWN MOTION.  I NEED TO BUY TIME FROM YOU ON THE

2  PRO PER PRIVILEGES.  WE WILL ANSWER ALL OF THOSE

3  QUESTIONS.  I NEED TO BUY TIME FROM YOU ON THIS 911

4  TAPE, BECAUSE THESE HAVE JUST BEEN FILED.  THERE'S

5  NO RESPONSE FROM THE PEOPLE.  I HAVE NOT HAD THE

6  OPPORTUNITY TO RESEARCH THEM.

7          SO I'M GOING TO HAVE YOU COME BACK.  I NEED

8  YOU TO COME BACK.  THE HEARING ON THESE MOTIONS WILL

9  BE READY TO BE HEARD IN ABOUT TWO WEEKS.  I NEED YOU

10  TO COME BACK SOONER THAN THAT TO RESOLVE THIS ISSUE

11  AS TO YOUR PRO PER PRIVILEGES.

12          NANCY, WHAT DID YOU FIND OUT?

13      BAILIFF:  THE PRO PER DEPUTY IS OFF ON FRIDAYS.

14  SO I CAN'T GET ANYBODY UNTIL MONDAY, UNLESS YOU WANT

15  ME TO GO HIGHER THAN HER.

16      THE COURT:  NANCY, THE JAIL HAS A PRO PER DEPUTY

17  THAT MONITORS -- WHERE ARE YOU HOUSED?

18      MR. CHRISTOPHER:  DOWNTOWN.

19      THE COURT:  CENTRAL.

20      BAILIFF:  ALL PRO PERS ARE HOUSED IN THE SAME

21  AREA, THAT'S WHY THEY HAVE A DEPUTY THAT HANDLES

22  THEM ALL.

23      MR. CHRISTOPHER:  IT'S ONLY FIVE.

24      THE COURT:  AND THEY'RE OFF ON FRIDAYS.  SO

25  LET'S HAVE MR. CHRISTOPHER BACK NEXT THURSDAY.

26      MR. CHRISTOPHER:  ALSO, YOUR HONOR, I WOULD LIKE

27  TO, SINCE I'M COMING BACK NEXT THURSDAY, I WOULD

28  LIKE TO ISSUE A SUBPOENA TO THE CALIFORNIA HIGHWAY

DEPARTMENT REQUESTING ALL RECORDS OF ANY INCIDENT ON
HIGHWAY 125, WHICH THE PROSECUTION ALLEGED THIS
INCIDENT HAPPENED.  I'VE GOTTEN TWO SIDES OF THE
STORY --

    THE COURT:  ALL RIGHT.

      SO WHEN YOU COME BACK --

    MR. CHRISTOPHER:  -- OF DIFFERENT SIDES OF
HIGHWAY 125 AND IF THIS IS THE CASE, YOU KNOW, THEN
IT SHOULD -- SOMEONE SHOULD HAVE CALLED AND SAID
SOMETHING.  I KNOW THAT'S A BUSY HIGHWAY.  SOMEONE
SHOULD HAVE CALLED AND SAID, "THERE'S AN INCIDENT ON
HIGHWAY 125."  I WANT THE RECORDS FROM 8:00,
DECEMBER 4TH, TO 2:00, DECEMBER 5TH.

    THE COURT:  SO SERVE YOUR SUBPOENA.

    MR. CHRISTOPHER:  I HAVE BEEN TOLD BY THE
INVESTIGATOR THAT I SHOULD MAKE OUT THE SUBPOENA AND
SAID THE COURT SHOULD SIGN IT.  THEY SAID THE COURT
HAS TO SIGN IT.

    THE COURT:  DO YOU HAVE THE SUBPOENA READY?

    MR. CHRISTOPHER:  I HAVE A SUBPOENA HERE.  I
CAN -- IT'LL TAKE ME BUT TWO SECONDS.

    THE COURT:  WHEN YOU COME BACK ON THURSDAY.

    MR. CHRISTOPHER:  WHEN I COME BACK THIS THURSDAY
I'LL BRING IT.

    THE COURT:  OKAY.

      SO THURSDAY, APRIL 26TH AT 9:30, YOU'LL BE
ON THE CALENDAR TO RESOLVE THE ISSUE OF YOUR PRO PER
PRIVILEGES AND TO ADDRESS THE SUBPOENA.  THEN, I'LL

12

HAVE IT ON FOR HEARING, ON YOUR MOTION, ON THE BROWN
RECORDS, AND THE 911 TAPES.

MS. GRASSO:  YOUR HONOR, I HAVE -- THOSE ARE ALL
SET FOR MAY 18TH.

THE COURT:  ARE THEY ALREADY SET FOR HEARING?

MS. GRASSO:  ACCORDING TO WHAT I HAVE IN FRONT
OF ME, YES, YOUR HONOR.

MR. CHRISTOPHER:  THAT WOULD BE CUTTING IT CLOSE
TO THE TRIAL DATE, YOUR HONOR, TO ISSUE SUBPOENAS --

THE COURT:  I DON'T LIKE THAT MAY 18TH DATE.  I
AGREE WITH THAT.  I DON'T THINK THEY SHOULD BE ON
THE FRIDAY CALENDAR.  I'M GOING TO PUT IT ON
TUESDAY, MAY 8TH, AND THAT'S THE DATE THAT'S ON
THESE PLEADINGS, TUESDAY, MAY 8TH AT 9:30.  WE WILL
HEAR THESE MOTIONS ON TUESDAY, MAY 8TH AT 9:30.

MR. CHRISTOPHER:  ALL RIGHT.

THE COURT:  WE'LL BE READY FOR YOU.

MR. CHRISTOPHER:  I'LL BRING THE -- IF I HAVE MY
INVESTIGATOR COME BY, COULD YOU SIGN IT?

THE COURT:  YES, WELL, IF IT'S IN PROPER FORM.

MR. CHRISTOPHER:  YEAH, IT IS.

THE COURT:  SO WE WILL DEFER THOSE ISSUES UNTIL
NEXT THURSDAY, THE 26TH, AND THEN THE MOTIONS UNTIL
MAY 8TH, ALL RIGHT?

MR. CHRISTOPHER:  OKAY.

MS. GRASSO:  YOUR HONOR, MAY I INQUIRE ONE MORE
THING?  THE 1381, WAS THAT DENIED WITH OR WITHOUT
PREJUDICE?  THIS IS THE THIRD TIME THE DEFENDANT HAS

1  BROUGHT THIS BEFORE THE COURT.

2      THE COURT:  WITH PREJUDICE.  IT'S DENIED.

3  THERE'S NO BASIS FOR IT.  I DID NOT KNOW IT WAS

4  BROUGHT BEFORE.  IT'S DENIED.

5      MS. GRASSO:  THIS IS THE THIRD COURT THAT HAS

6  HEARD IT, YOUR HONOR.

7      MR. CHRISTOPHER:  THAT'S NOT TRUE.  IT WAS JUST

8  FILED IN THE PRELIMINARY HEARING.

9      THE COURT:  I DON'T KNOW WHAT THE HISTORY OF IT

10  IS, BUT IT'S DENIED.

11      MR. CHRISTOPHER:  YOUR HONOR, CAN I ASK ONE MORE

12  THING?

13      THE COURT:  OKAY.

14      MR. CHRISTOPHER:  CAN I HAVE THE TRANSCRIPT OF

15  THIS 1381 HEARING --

16      THE COURT:  YES.

17      MR. CHRISTOPHER:  -- REPORTED TO ME BY WHEN, A

18  WEEK OR SO?

19      THE COURT:  YES.

20      MR. CHRISTOPHER:  THANK YOU.

21      THE COURT:  WE SHOULD HAVE IT READY FOR YOU NEXT

22  THURSDAY.

23      MR. CHRISTOPHER:  THANK YOU.  NEXT THURSDAY, WE

24  WILL BE BACK?

25      THE COURT:  RIGHT.  WHEN YOU COME BACK, I'LL

26  HAVE THE TRANSCRIPT OF THESE PROCEEDINGS.

27      MR. CHRISTOPHER:  THANK YOU.

28      THE COURT:  OKAY.

14

1          THANK YOU.

2     MS. GRASSO:   THANK YOU, YOUR HONOR.

3

4          (THE PROCEEDINGS WERE CONCLUDED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF CALIFORNIA.      } SS
COUNTY OF SAN DIEGO      }


PEOPLE VS. CARRE CHRISTOPHER, JR., CASE NO. SCE269321


I, TERESA MENDOZA, CSR NO. 12947, AN OFFICIAL REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN DIEGO, HEREBY CERTIFY THAT I REPORTED IN MACHINE SHORTHAND THE PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE, AND THAT THE FOREGOING TRANSCRIPT, CONSISTING OF PAGES NUMBERED 1 THROUGH 14, INCLUSIVE, IS A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE SAID PROCEEDINGS HELD ON APRIL 20, 2007.


DATED AT EL CAJON, CALIFORNIA, THIS 26TH DAY OF APRIL, 2007.




_Teresa Mendoza_
TERESA MENDOZA
CSR NO. 12947

102